# UNITED STATES *v.* RANLETT AND STONE.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 20. Submitted October 11, 1898. — Decided December 5, 1898.

Section 7 of the act of February 8, 1875, c. 36, 18 Stat. 307, 308, was repealed by the tariff acts of 1883 and of 1890.

When a later statute is a complete revision of the subject to which the earlier statute related, and the new legislation was manifestly intended as a substitute for the former legislation, the prior act must be held to have been repealed.

When bags are imported, part of which are returned bags of American manufacture and part foreign, if the appraiser, after examination, decides that the goods are not as described, his judgment must stand unless reversed.

Section 2901, Rev. Stat., was intended for the benefit of the Government, and is not mandatory.

Where merchandise, liable in large part to duty, is entered as exempt therefrom, the collector has the right to assume that the mingling was intentional and with design to evade the revenue laws; and it devolves upon the importer to show what part of the whole he contends should not be taxed.

In the light of the rulings of the Treasury Department, and the special cir-

cumstances of the case, the court is not disposed to hold that if the proportion of dutiable bags sufficiently appeared or might reasonably have been ascertained, the Circuit Court could not have adjudged a recovery of that proportion, or directed a reliquidation.

In view of the testimony, and considering that the statute was not strictly pursued in the examination (though the court perceives no reason to doubt the faithfulness of the officials in the discharge of their duties), and the difficulties in the way of determining the make of the bags disclosed by the evidence, and bearing in mind that the taxation of so many of the bags as were of American manufacture operated as a penalty in spite of the concession that no fraud on the revenue was intended, the court thinks it unnecessary to remand the cause for another hearing, and that the ends of justice will be best subserved by directing a decree for the refunding of one fourth of the duties paid.

RANLETT and Stone imported at the port of New Orleans, from Liverpool, England, 2925 bales of grain bags, known as cental bags, each bale containing one thousand bags, or 2,925,000 in all, by several vessels, the entries running from August 14, 1893, to January 15, 1894.

The bags were entered free of duty under paragraph 493 of the act of October 1, 1890, c. 1244, 26 Stat. 603, as bags of American manufacture returned to the United States.

That paragraph is as follows:

"Articles the growth, produce and manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; casks, barrels, carboys, bags and other vessels of American manufacture exported filled with American products, or exported empty and returned filled with foreign products, including shooks when returned as barrels or boxes; . . . but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury; and if any such articles are subject to internal tax at the time of exportation such tax shall be proved to have been paid before exportation and not refunded: *Provided*, That this paragraph shall not apply to any article upon which an allowance of drawback has been made, the reimportation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed. . . ."

The general regulations prescribed by the Secretary of the Treasury under this paragraph contained the following provisions:

"ART. 331. Articles of the growth, produce and manufacture of the United States, exported to a foreign country and returned without having been advanced in value or improved in condition, by any process of manufacture or other means, and upon which no drawback or bounty has been allowed, are entitled to entry free of duty, but this privilege does not extend to articles exported in bond from a manufacturing warehouse and afterward returned to this country. The exportation must be *bona fide* and not for the purpose of evading any revenue law.

*　　　*　　　*　　　*　　　*

"If returned to the port of original exportation, the fact of regular clearance for a foreign destination must be shown by the records of the customs, . . . and by the declaration of the person making the entry. But when the reimportation is made into a port other than that of original exportation, there shall be required, in addition to the declaration, a certificate from the collector and the naval officer if any, of the port, where the exportation was made showing the fact of exportation from that port.

*　　　*　　　*　　　*　　　*

"ART. 332. To guard against fraud, and to insure identity, the collector shall require, in addition to proof of clearance, the production of a statement, certified by the proper officer of the customs at the foreign port from which the reimportation was made, and authenticated by the consul of the United States, that such merchandise was imported from the United States in the condition in which it is returned, and that it has not been advanced in value or improved in condition by any process of manufacture or other means."

*　　　*　　　*　　　*　　　*

"ART. 335. Casks, barrels, carboys, bags and vessels of American manufacture, exported filled with American products, or exported empty and returned filled with foreign products, including shooks when returned as barrels or boxes,

are free of duties, but in case drawback has been allowed upon the exportation of any such articles, they shall on importation be subject to a duty equal to the drawback. Proof of the identity of such articles must be made, and if any of them were subject to internal tax at the time of exportation, such tax shall be proved to have been paid before exportation and not refunded, or duty will accrue.

\*　　　\*　　　\*　　　\*　　　\*

" ART. 336. Before entry, the following proof shall be required by the collector :

" *First.* A certificate as follows from the shipper in triplicate, attested by a consul or other proper officer authorized to take affidavits, as follows :

" I hereby certify, under oath, that, to the best of my knowledge and belief, the [1] ——— hereinafter specified, are truly of the manufacture of the United States,[2] ——— or were exported from the United States, filled with [1] ———, and that it is intended to reship the same to the port of ———, in the United States,[3] ——— on board the ——— now lying in the port of ———. I further certify that, to the best of my knowledge and belief, the actual market value of the articles herein named, at this time and in the form in which the same are to be exported to the United States, is as follows [4] ———.

" Sworn to before me, this — day of ———, 18—.

\*　　　\*　　　\*　　　\*　　　\*

" *Second.* A declaration in the entry by the importer of the name of the exporting vessel, the date of the ship's manifest, and the marks and numbers on the articles for which free

---

[1] " Name the articles.

[2] " If the packages are empty, insert statement of the facts, as ' and were exported from the United States filled with the produce of that country.'

[3] " If the packages contain foreign merchandise, insert ' filled with ' and a description of the merchandise they contain.

[4] " This blank is to be filled only when the merchandise contained in the packages is subject to a duty ad valorem."

entry is sought. If the exportation was made by railroad, the way bill may be substituted as evidence for the manifest. The marks and numbers should be such as to prove beyond any reasonable doubt the identity of the articles with those entered on the outward manifest. . . .

" *Third.* An affidavit by the importer, attached to the entry, that the articles mentioned therein are to the best of his knowledge and belief truly and *bona fide* manufactures of the United States, or were bags exported therefrom filled with grain."

\*          \*          \*          \*          \*

" *Fifth.* Verification, after examination, by the appraiser, with an indorsement stating whether the articles are of domestic or of foreign manufacture.

" Such bags and other coverings exported to be returned should, when practicable, be marked or numbered, in order that they may be identified on their return; and the marks or numbers should appear on the shipper's manifest upon which they are exported."

When the respective shipments arrived in this country free entry was made by the importer and evidence furnished regarding the right to free entry and the character of the goods. Samples of the respective invoices were then sent to the appraiser's office and examined as follows:

From one entry of 600 bales, 70 were ordered to the appraiser's store and 18 of that number were opened by him;

Of another entry of 650 bales, 43 were ordered to the store and 19 were opened;

Of a third entry of 325 bales, 38 were ordered to the store and 13 were opened;

Of a fourth entry of 850 bales, 85 were ordered to the store and 16 were opened;

Of a fifth entry of 300 bales, 21 were ordered to the store and 14 were opened;

Of a sixth entry of 100 bales, 100 were ordered to the store and 10 were opened;

And of a seventh entry of 100 bales, 100 were ordered to the store and 10 were opened.

The examination of the bales was made by the appraiser, assisted by an examiner. The appraiser reported as to each importation that the bales contained bags of foreign manufacture, subject to duty, and thereupon the collector, by direction of the Treasury Department, at the request of the importers in order to obtain possession of the goods, made impost entries, assessing duties at the rate of two cents per pound on the entire consignment, under paragraph 365 of the act of 1890, 26 Stat. 593, as "bags for grain made of burlaps." The importers protested against the "decision, liquidation and rate and amount of duties assessed," on the grounds: That the bags were entitled to free entry under paragraph 493 of the free list as bags of American manufacture, exported filled with American products; that, if not free under that paragraph, they were entitled to free entry under the provisions of section 7 of the act of February 8, 1875, and the regulations for the free entry of bags other than of American manufacture, prescribed by the Secretary of the Treasury thereunder; and that the goods were not fairly and faithfully examined by the appraisers; that the assessment of two cents per pound because the bales contained a mixture of foreign and American bags was incorrect, and that the goods being all of one value, whether of foreign or American make, did not come under the provisions of section 2910 of the Revised Statutes.

The Board of General Appraisers sustained the action of the collector. General Appraisers' Decisions, No. 2623.

The importers applied for a review of this decision to the Circuit Court of the United States for the Fifth Circuit, which, without taking any additional testimony, reversed the decision of the board, and entered a decree that the duties paid by Ranlett and Stone, namely, two cents per pound on the several consignments of bags, enumerating them, be refunded; "that the examination heretofore made of said bales of bags is void and not in conformity to law or the regulations of the Treasury Department, and any liquidation of duties based on said examination is illegal and void, and the liquidation of duties heretofore made be set aside, and the money

received from Ranlett and Stone as duties be refunded as aforesaid; and the court doth further order and decree that the collector direct a reëxamination of said bales of bags to be made according to law, and on such reëxamination to reliquidate the duties which may be lawfully due thereon."

The United States appealed from the decree to the Circuit Court of Appeals, which certified certain questions to this court, whereupon a writ of certiorari was issued and the entire record brought up.

*Mr. Assistant Attorney General Hoyt* and *Mr. W. J. Hughes* for appellants.

*Mr. Thomas J. Semmes* and *Mr. William A. Maury* for appellees.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

In respect of these importations, it must be assumed that the bags were not in fact all of American manufacture or substantially so.

The opinion of the General Appraisers stated that "it was admitted that there were bags of foreign manufacture and of American manufacture, all indiscriminately mingled together, no attempt being made on entry or afterwards to separate from these enormous totals of goods of the same class those claimed to be relieved from duty accompanied by the proof establishing such indulgence." The examiner testified that he "in some cases examined every bale of the whole entire invoice;" that he used his judgment "to try to open sufficient to get at the classification of the goods;" and that where he opened the bales and examined them he found of foreign make in general "from seventy-five to eighty per cent." Indeed we do not understand the importers to deny that these importations contained foreign made bags.

Under Title 33 of the Revised Statutes a duty was imposed on grain bags, except those manufactured in the United

States and exported containing American products, declaration having been made of intent to return the same empty. Rev. Stat. §§ 2504, 2505.

By section 7 of the act of February 8, 1875, c. 36, 18 Stat. 307, 308, it was provided: "That bags, other than of American manufacture, in which grain shall have been actually exported from the United States, may be returned empty to the United States free of duty, under regulations to be prescribed by the Secretary of the Treasury."

Section 6 of the tariff act of March 3, 1883, c. 121, 22 Stat. 488, 489, provided that on and after July 1, 1883, "the following sections shall constitute and be a substitute for Title 33 of the Revised Statutes." The provision in regard to empty returned bags of American manufacture was reënacted in substance in the free list, but that of section 7 of the act of 1875 was omitted, and bags, excepting bagging for cotton, were made dutiable.

Paragraph 493 of the tariff act of 1890 retained the same exemption from duty upon returned empty bags of American manufacture, and was silent in regard to returned empty foreign made bags which were filled when exported.

In view of this legislation, Acting Attorney General Maxwell advised the Secretary of the Treasury, July 20, 1893, that the provision of section 7 of the act of 1875 exempting foreign made grain bags was repealed. 20 Op. Atty. Gen. 630. This ruling was followed and approved by the Treasury Department, August 22, 1893, Syn. T. D. 14,281; and the same ruling was made by the Board of General Appraisers, February 3, 1894, in *Kent* v. *United States*, G. A. 2448, as it had been in prior decisions; by Judge Lacombe, in effect, April 21, 1891, in *In re Straus*, 46 Fed. Rep. 522; and specifically by Judge Townsend in *Kent* v. *United States*, 68 Fed. Rep. 536, June 2, 1895. The latter case was carried to the Circuit Court of Appeals for the Second Circuit and the decree affirmed, April 7, 1896, 38 U. S. App. 554. The rule applied was that "when a later statute is a complete revision of the subject to which the earlier statute related, and the new legislation was manifestly intended as a substi-

tute for the former legislation, the prior act must be held to have been repealed;" and the opinion of Judge Shipman leaves nothing to be added in support of the conclusion reached.

Foreign made bags, then, being dutiable at two cents per pound under paragraph 365 of the act of October 1, 1890, and these bales being permeated with bags of foreign manufacture, the appraiser reported all the bags as dutiable and the collector so assessed them.

But the importers insist that this assessment was illegal because of the insufficiency or invalidity of the examination; or of the absence of a statute specifically applicable; or because it was not confined to foreign made bags.

Paragraph 493 required proof of the identity of articles entered as exempt thereunder, and this was not only repeated in the regulations, but Article 336 required " verification, after examination, by the appraiser, with an indorsement stating whether the articles are of domestic or foreign manufacture." By section 2 of the Customs Administrative Act of June 10, 1890, c. 407, all invoices must contain a correct description of the merchandise, signed by the manufacturer or by the person owning or shipping the same, or by his duly authorized agent, which under section 5 might be adopted by the domestic consignee or owner, who by section 9 was made liable for the employment or use of any fraudulent or false invoice or statement by means whereof the United States may be deprived of lawful duties. Under section 10 it was the duty of the appraiser to ascertain, estimate and appraise the actual market value and wholesale price of merchandise imported, and the number of yards, parcels and quantities. And evidently this ascertainment involves character and quality as well as value, since the statement, invoice or entry must be true in respect of the character of the goods as well as of their value. 26 Stat. 131, 136.

On the question of identity, then (which under the law includes the question of country of manufacture), the production of the papers required by the regulations are not conclusive proof, and if the appraiser, after actual examination had,

decides that the goods are not as described, but are such, in fact, as to fall within a different classification, and so reports to the collector, his judgment must stand unless reversed on reappraisement, or by the Board of General Appraisers on protest filed.

As to these bags, the examiner reported to the appraiser his finding of a very large percentage of foreign made bags in the shipments, and the appraiser reported that he found the shipments to contain bags of foreign manufacture and that the importations were dutiable at two cents per pound under paragraph 365.

If the importers were not satisfied with the examination made, and objected to the competency of the examiner and appraiser, they should have applied for a reëxamination ; but they did not do this, nor did they offer evidence before the Board of General Appraisers tending to establish an objection on that ground.

But it is said that the appraisement was invalid because the examination was not in accordance with § 2901 of the Revised Statutes. That section, however, was intended for the benefit of the Government, and we have held that it is not mandatory, and that official acts are not invalidated for want of strict compliance therewith. *Erhardt* v. *Schroeder*, 155 U. S. 124, 125 ; *Origet* v. *Hedden*, 155 U. S. 228.

The section reads thus :

" The collector shall designate on the invoice at least one package of every invoice, and one package at least of every ten packages of merchandise, and a greater number should he or either of the appraisers deem it necessary, imported into such port, to be .opened, examined and appraised, and shall order the package so designated to the public stores for examination ; and if any package be found by the appraisers to contain any article not specified in the invoice, and they or a majority of them shall be of opinion that such article was omitted in the invoice with fraudulent intent on the part of the shipper, owner or agent, the contents of the entire package in which the article may be, shall be liable to seizure and forfeiture on conviction thereof before any

court of competent jurisdiction ; but if the appraisers shall be of opinion that no such fraudulent intent existed, then the value of such article shall be added to the entry, and the duties thereon paid accordingly, and the same shall be delivered to the importer, agent or consignee.    Such forfeiture may, however, be remitted by the Secretary of the Treasury on the production of evidence satisfactory to him that no fraud was intended."

Assuming that fraudulent intent was lacking, these bags were not held for forfeiture, but the collector, in effect, added them all to the entries, leaving it to the importers to prefer such claim to exemption as they might consider they were entitled to.

Section 2901 was brought forward from section 32 of the act of March 2, 1861, c. 68, 12 Stat. 197, and on December 28, 1868, Mr. Secretary McCulloch made the following ruling.

At that time the law imposed a duty of twelve cents per pound on all woollen rags, and admitted free rags composed of cotton and linen and intended for the manufacture of paper, and twenty-one bales of rags brought into the country from Canada and containing at least forty per cent of woollen rags, though imported as containing rags for the manufacture of paper, had been seized.    The matter being referred to the Secretary, he ruled, in a letter addressed to the Collector of Customs at Rochester, as follows : "If you are satisfied that there was no intention on the part of the importers to conceal the dutiable rags by mingling them with others free of duty, you will not hold them for condemnation, but will allow the parties to separate such as are dutiable from such as are not so, and make entry accordingly, paying the proper duty on the former class.    These instructions are to be considered as applicable only to such bales as contain so large a proportion of woollen rags as to render it worth while to collect a duty. Forty per cent of woollen rags is, however, much too large a percentage to be allowed entry as free goods."

Again, in July, 1890, it was held by the Treasury Department that where cargoes of anthracite and bituminous coal were imported, so mixed as to render it impracticable to

separate the free from the dutiable coal for the purpose of the accurate weighing of each kind, the whole cargo should be treated as dutiable. T. D. 10,098, Syn. 1890.

The general policy of the law is indicated in the statutory requirements that where goods of different qualities or different values are mingled, or are composed of material of different values, the highest rate of duty shall be imposed, as in the familiar instances of the classification of articles composed of two or more materials, at the rate of duty charged on the component material of chief value; in section 2911 of the Revised Statutes, that whenever articles composed wholly, or in part, of wool or cotton, of similar kind, but different quality, are found in the same package, charged at an average price, the appraisers shall adopt the value of the best article as the average value; in section 2912, that when bales of wool of different qualities are embraced in the same invoice at the same prices whereby the average price is reduced more than ten per centum below the value of the bale of the best quality, the value of the whole shall be appraised according to the value of the bale of the best quality, and that no bale, bag or package shall be liable to a less rate of duty in consequence of being invoiced with wool of lower value; and in section 2910, that: "When merchandise of the same material or description, but of different values, is invoiced at an average price, and not otherwise provided for, the duty shall be assessed upon the whole invoice at the rate to which the highest valued goods in such invoice are subject."

Numerous provisions exist in the statutes and regulations designed to protect the Public Treasury from the bringing in of goods at a less rate of duty than they ought to pay under cover of association with goods properly subject to the lower amount; and the protection intended to be secured ought, on principle, equally to be accorded in respect of dutiable goods invoiced indiscriminately with free goods.

Of these seven importations, according to the importers, all the bales in two of them, and ten per cent of those in three of them, were ordered to the appraiser's store, while as to two of them, the number taken for examination fell a little

short of ten per cent; and of all these bales, one hundred were opened. It appeared also that all the merchandise covered by all the invoices was of the same character and description. Since the bales that were opened were found to contain foreign made bags in large numbers in importations claimed to consist solely of American made bags, it is not easily seen how the examination of a larger number of bales would have affected the result arrived at by the appraiser. And, as before observed, if the importers believed that they had sustained injury because more bales were not opened, they should have applied for a reëxamination, and they might have produced evidence before the Board of General Appraisers to maintain their claim that the bags were American made notwithstanding the return of the examiner and the report of the appraiser, or they might have protested on the ground that the duty should have been levied only on part thereof, and tendered evidence to support that contention.

If they had furnished evidence of the number of bags of domestic manufacture and the number of bags of foreign manufacture, or had sought a reëxamination with the view to an adjustment by proportion, and that had been had, then the collector might have assessed the foreign bags so ascertained and admitted the American bags free from duty. But it was for the importers and not for the Government to make the separation on which such a claim for relief would have rested, or, at least, to have invoked the rule of proportion based on a reëxamination.

The importers contended that they had complied with the law and the Treasury regulations by furnishing certain statements of the shippers as to the origin of the goods, and certain certificates as to their exportation filled with wheat, and that this *prima facie* evidence of the bags being of the manufacture of this country had not been disproved. But if it were admitted that these papers made a *prima facie* showing, that showing was overturned when it appeared that foreign made bags in large numbers made up the importations.

The remedies provided by the act of June 10, 1890, furnish the equivalent for the action against the collector which was

originally the remedy for an illegal exaction of duties, *United States* v. *Passavant*, 169 U. S. 16; *Schoenfeld* v. *Hendricks*, 152 U. S. 691; and as in that action, so in this proceeding, the importer must establish the illegality in order to recover back duties paid under protest; and this, in a case like the present, involves, in substantiating that contention, the making proof of the identity of the merchandise. *Earnshaw* v. *Cadwalader*, 145 U. S. 247, 262; *Erhardt* v. *Schroeder*, 155 U. S. 124.

Moreover, where merchandise liable in large part to duty is entered as exempt therefrom, the collector has the right to assume that the mingling was intentional and with design to evade the revenue laws; and hence even where the confusion of goods is accidental or not fraudulent in fact, and forfeiture is not incurred, it yet devolves on the importer to show what part of the whole he contends should not be taxed.

These importers, however, planted themselves on the ground that all these bags were exempt under the act of 1875; or, if not, that the assessment was wholly void for insufficient examination; or illegal except as to foreign made bags, which it devolved upon the Government to segregate from the common mass.

In the case of *Kent*, already referred to, it was decided by the Board of General Appraisers, February 3, 1894 (G. A. 2448), that the act of February 8, 1875, was not in force, and a reliquidation was ordered for a classification according to the proportion of foreign and American bags found in two bales which by agreement had been examined as representative bales, bag by bag. On the second of May, 1894 (G. A. 2610), the Board of General Appraisers held, in the matter of Balfour, Guthrie & Company, that inasmuch as bags made of burlaps were dutiable, except such as are described in paragraph 493, it was the duty of all persons, bringing in goods claimed to be free out of a class otherwise dutiable, to prove affirmatively the facts constituting the exemption, and that they should separate and designate such merchandise accompanied by the evidence required by law. This decision was reaffirmed May 5, 1894 (G. A. 2613), and again in the case before us.

On the 27th of April, 1894, which was after this case had been carried before the Board of General Appraisers and the evidence had been taken, the Treasury Department (T. D. 14,912) held that in the absence of any provision of law to prevent the importation of both free and dutiable second hand bags baled together, collectors might pursue the course of examining the designated number of packages, making such investigation of their contents as would reveal the character of the bags contained therein, and then adopt the finding of the appraisers as the basis of the assessment of duty on bales not examined. And since then it has been determined that importers of bags must have bags of foreign and bags of domestic origin packed separately. T. D. 18,425.

Notwithstanding the positions taken by the importers are, as we have seen, untenable, we are not disposed to hold, in the light of these rulings of the Department and the special circumstances of the case, that, if the proportion of dutiable bags sufficiently appeared or might reasonably have been ascertained, the Circuit Court could not have adjudged a recovery in that proportion, or directed a reliquidation.

A reëxamination *de novo* is now impracticable, but it appears to us that the evidence taken by the Board affords an adequate basis for a conclusion. The examiner testified that he found " along about 80 to 86 per cent foreign make ; " " in general from seventy-five to eighty per cent ; " and that, in his judgment, there was no invoice " that would show over twenty-five per cent of American bags ; " yet he also said that he could not give specific details of each invoice, and that he " supposed if seventy-five per cent of the bags in the bale were of foreign manufacture, it carried the whole of them."

In view of this testimony, and considering that the statute was not strictly pursued in the examination (though we perceive no reason to doubt the faithfulness of the officials in the discharge of their duties), and the difficulties in the way of determining the make of the bags disclosed by the evidence, and bearing in mind that the taxation of so many of the bags as were of American manufacture operated as a penalty in

spite of the concession that no fraud on the revenue was intended, we think it unnecessary to remand the cause for another hearing, and that the ends of justice will be best subserved by directing a decree for the refunding of one fourth of the duties paid.

*Decree reversed, and cause remanded with a direction to enter such a decree.*