### JOHN B. ELLISON & SONS v. UNITED STATES.

(Circuit Court, E. D. Pennsylvania.   March 11, 1905.)

#### No. 45.

1. CUSTOMS DUTIES—ENTRY FOR IMMEDIATE TRANSPORTATION—ENTRY AT INTERIOR PORT BEFORE ARRIVAL.

    Imported merchandise entered at one port for immediate transportation to another cannot be entered for consumption at the latter port before its arrival within the limits of that port.

2. SAME—CONFUSION OF GOODS.

    Where an importer has protested against the imposition of duties alleged to be excessive, and there is no way of distinguishing the merchandise properly assessed from that which is subject to the duty claimed by the importer, the protest must be overruled as to all the merchandise.

3. SAME—ENTRY.

    In the provision in section 33, Tariff Act July 27, 1897, c. 11, 30 Stat. 213 [U. S. Comp. St. 1901, p. 1701], for "merchandise previously imported, for which no entry has been made," the word "entry" refers to an entry for consumption.

4. SAME.

    The provision in section 33, Tariff Act July 27, 1897, c. 11, 30 Stat. 213 [U. S. Comp. St. 1901, p. 1701], that "on and after" that date merchan-

dise previously imported should be subjected to the duties imposed by said act, is not limited to merchandise imported prior to that date, but applies also to that imported on that day.

5. SAME.

Certain merchandise was imported at the port of New York July 24, 1897, and there entered for immediate transportation to the port of Philadelphia; and, before the tariff act of that date (chapter 11, 30 Stat. 213 [U. S. Comp. St. 1901, p. 1701]) had become operative, the importer sought to enter the merchandise under the tariff act of August 27, 1894, c. 349, 28 Stat. 509, and tendered an entry in due form to the collector at the latter port, which was refused on the ground that the goods had not reached that port. *Held,* that the action of the collector was justified.

On Application for Review of a Decision of the Board of United States General Appraisers.

The decision below (G. A. 5,482, T. D. 24,796) affirmed the assessment of duty by the collector of customs at the port of Philadelphia on merchandise imported by John B. Ellison & Sons.

William A. Keener and J. Stuart Tompkins, for importers.

Wm. M. Stewart, Jr., Asst. U. S. Atty., J. Whitaker Thompson, U. S. Atty.

J. B. McPHERSON, District Judge. The facts out of which this controversy arises are stated in the following opinion of the Board of General Appraisers:

"This case involved the question whether the goods under consideration are dutiable under the tariff act of 1897 or that of 1894.

"From the record and the evidence offered at the hearing, we find the following to be the facts:

"The goods consist of woolen and worsted cloths, and were imported from England by the steamer Paris, which arrived at New York on July 24th, 1897, on which day a representative of the importers entered them at the New York customhouse for immediate transportation to Philadelphia, the entry reciting that they were 'intended to be transported by the Pennsylvania Railroad Company, under their bond dated February 12th, 1893,' and also that they were 'consigned to the collector of customs at Philadelphia.' The precise hour of the day on which this immediate transportation entry was made is not shown, but is stated to have been early in the day.

"On the same day, Saturday, July 24th, 1897, the importers sent a clerk to the customhouse at Philadelphia, who appeared before the special deputy collector there, presented a duly certified consular invoice, tendered the duties in cash, and asked permission to make a consumption entry of the merchandise. The testimony shows that this was at some time before 12 o'clock noon. The deputy collector refused the entry on the ground that the goods had not reached Philadelphia. Subsequently, on July 28th, the goods were formally entered and were assessed for duty under paragraph 366 of the tariff act of July 24th, 1897 (chapter 11, § 1, Schedule K, 30 Stat. 184 [U. S. Comp. St. 1901, p. 1666]). The importers paid the duties under protest, claiming that the articles were properly dutiable under the tariff act of August 28, 1894.

"It has been held by this board and the courts that the tariff act of 1897 took effect at the moment the President signed it—that is to say, at 6 minutes past 4 o'clock on the afternoon of July 24th, 1897. United States v. Stoddard, 91 Fed. 1005, 34 C. C. A. 175, affirming 89 Fed. 699, and In re Stoddard, G. A. 3,993; United States v. Iselin, 95 Fed. 1007, 36 C. C. A. 681, affirming 87 Fed. 194, and In re Iselin, G. A. 3,989, T. D. 18,533. It has also been held that after notice of the arrival of a vessel has been posted at the customhouse an importer may enter goods that are on board of her, without waiting for her master or captain to enter her with the collector. United States v. Legg, 105 Fed. 930, 45 C. C. A. 134.

"Goods entered in bond for immediate transportation are constructively in a bonded warehouse, and under the custody of the government, and the year within which they may be withdrawn for consumption, as provided by section 2970 of the Revised Statutes [U. S. Comp. St. 1901, p. 1950], begins to run from the date of their arrival at the port of original importation, and not that of ultimate destination. Seeberger v. Schweyer, 153 U. S. 609, 14 Sup. Ct. 881, 38 L. Ed. 839. We do not find it necessary to determine where a withdrawal entry should be presented while goods are in transitu between the two ports, or precisely when the collector of the port of ultimate destination obtains jurisdiction over them. There is much reason for thinking that the merchandise must come within the limits of his collection district before he could lawfully accept a withdrawal entry, although the question is not free from doubt. In the present case the record contains a report by the collector of customs at New York that the Pennsylvania Railroad Company receipted for six of the cases on the 24th of July, 1897 (the last day on which the tariff act of 1894 remained in operation), and for thirty-four cases on the 26th of July. This report has not been controverted by the importer, and we find it to be true. There is nothing in the record to show which of the cases were received by the railroad company on the 24th of July, or, indeed, the time of day at which they were received. It is, of course, clear that the thirty-four cases which remained under the control of the collector at New York till July 26th, when the present tariff act was in full operation, were properly assessable for duty under that act, and not under the act of 1894. They would be directly within the terms of section 33 (Act July 27, 1897, c. 11, 30 Stat. 213 [U. S. Comp. St. 1901, p. 1701]), providing for goods 'previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose.' As to these the collector at Philadelphia evidently could not have lawfully accepted a withdrawal entry under the tariff act of 1894.

"There being no evidence to show which of the six cases were delivered to the railroad company on July 24th, this board is not in a position to make any intelligent order concerning them. It seems highly improbable that they could have passed out of the jurisdiction of the New York collector before 4:06 p. m. on July 24th, 1897. There are many details of regulation to be complied with before the goods could be turned over to the carrier. See General Treasury Regulations for 1892, arts. 394 to 428. Then, too, freight does not move as soon as received, and its progress is apt to be slow. One of the witnesses called by the importers expressly testified that all the goods 'were not placed on board the cars' on July 24th, 1897. It is significant, too, that none of the goods were entered at Philadelphia till July 28th.

"Our conclusion is that thirty-four of the cases are clearly dutiable under the tariff act of 1897, and that as to the remaining six the evidence fails to support with reasonable certainty the claim that they are dutiable under the act of 1894, and, further, that it is impossible to tell which of the whole importation these six cases were.

" 'Where an importer mixes en masse two kinds of goods, and it is impracticable or impossible to separate them, a protest, the claim in which covers the entire importation, must be overruled, even though some of the goods might be subject to the classification claimed in the protest.' In re Arbib, G. A. 4,014, T. D. 18,616; In re Schmoll, G. A. 4,624, T. D. 21,900; United States v. Ranlett, 172 U. S. 133, 19 Sup. Ct. 114, 43 L. Ed. 393.

"The protest is overruled, and the decision of the collector affirmed."

It is no doubt true that something may be said, from an equitable point of view, in favor of the importers' position; but, as I regard it, the difficulty is that the positive language of the law must furnish the rule for decision. The çases cited by the board —to which may be added Nunn v. Gerst Brewing Co., 99 Fed. 939, 40 C. C. A. 190—have decided that the tariff act of 1897 did not go into effect until a few minutes past 4 o'clock on July 24, and that goods entered for consumption before that hour were dutiable under the act of 1894. If, therefore, the plaintiffs' merchandise had

been entered for consumption at the port of New York, instead of being entered there for immediate transportation to the port of Philadelphia, the same decision would be made in the present case as was made in the cases that have been cited. But while the goods had been "imported" into the United States, and had become subject to duty upon the arrival of the vessel in the port of New York, an entry for consumption could not be made in Philadelphia because the goods were not within the limits of that port at the time when the duty was tendered to the collector: Arnold v. United States, 9 Cranch, 104, 3 L. Ed. 671; United States v. Vowell, 5 Cranch, 368, 3 L. Ed. 128. A special act of Congress is necessary to permit such an entry at any other port than the port of ultimate destination. See Rev. St. § 2816 [U. S. Comp. St. 1901, p. 1879] et seq. If the evidence leaves it in doubt whether 6 of the 40 cases had been delivered to the Pennsylvania Railroad in New York before the act of 1897 took effect, and therefore might perhaps be regarded as constructively within the jurisdiction of the collector of the port of Philadelphia, there is no way now of distinguishing these cases from the others, and in such a situation it has been decided by the Supreme Court that the whole protest must be overruled: United States v. Ranlett, 172 U. S. 133, 19 Sup. Ct. 114, 43 L. Ed. 393.

As I have already indicated, I am unable to escape from the express provisions of section 33 of the act of 1897 (Act July 27, 1897, c. 11, 30 Stat. 213 [U. S. Comp. St. 1901, p. 1701]):

"That on and after the date when this act shall go into effect, all goods, wares and merchandise previously imported, for which no entry has been made, and all goods, wares and merchandise previously entered without payment of duty, and under bond for warehousing, transportation, or other purposes, for which no permit of delivery to the importer, or his agent, has been issued, shall be subjected to the duties imposed by this act, and to no other duty upon the entry or withdrawal thereof."

Plainly, as it seems to me, the "entry" to which this section refers is an entry for consumption, for it is contrasted with an entry for other purposes, and, as the plaintiffs' goods fall precisely within the language of the statute, having been "previously entered without payment of duty and under bond for transportation," they are "subjected to the duties imposed by this act and to no other duty upon the entry or withdrawal thereof." In reaching this conclusion, I regret to be obliged to differ from the decision in Hartwell Lumber Co. v. United States (C. C.) 128 Fed. 306, where it was held that this section applies only to importations made prior to July 24. The reason given for that decision is that,

"To hold otherwise would practically be deciding that no importations could be made under the 1894 act on the day the new act took effect, even though they arrived at the port previous to the hour when the act became a law, since the law might have become effectual after the customhouse had closed, while yet there was plenty of time to have tendered entry and reported the vessel."

It has been held, however, in the cases heretofore referred to, that importations could be made under the act of 1894 during the earlier hours of July 24, and the reason for the decision seems

therefore to be impaired. But aside from this consideration, the language of the section seems to me to be unambiguous. "On" the date when it is to go into effect Congress declares that all merchandise "previously entered"—that is, as I understand it, entered before the act takes effect—without payment of duty, etc., is to pay the duty imposed by the act of 1897. In other words, if the goods have already become, in effect, part of the general stock of merchandise in the country, they are to pay the duty imposed by the act of 1894; if they have not yet become completely a part of such stock, they must pay the duty levied by the act of 1897. No doubt the test is arbitrary, but so many other tests would be; and, in any event, Congress had the right to choose it, and the courts must apply it.

The decision of the board is affirmed.