SEATTLE BREWING & MALTING CO. v. UNITED STATES.

(Circuit Court, W. D. Washington, N. D.   January 26, 1910.)

No. 1,469 (1,967).

**1.** CUSTOMS DUTIES (§ 73*)—CUSTOMS REGULATIONS—BROKEN RICE—AUTHORITY OF SECRETARY OF THE TREASURY.

Under Tariff Act July 24, 1897, c. 11, § 1, Schedule G, par. 232, 30 Stat. 169 (U. S. Comp. St. 1901, p. 1649), relating to broken rice that will pass through what is "known commercially as No. 12 wire seive," it appearing that there are several sieves so known commercially, the Secretary of the Treasury was authorized, in order to secure uniformity, to specify which of them should be used by customs officers.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 73.*]

**2.** CUSTOMS DUTIES (§ 73*)—EVIDENCE—DETERIORATION.

The fact that age and repeated handling of broken rice may have caused an infinitesimal increase in the percentage of the material that will pass through the standard sieve is not a sufficient reason for rejecting a test based on samples of such rice, especially where the failure to make a proper test at the time of importation was due to no fault of the importer.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 73.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On Application for Review of a Decision by the Board of United States General Appraisers.

The Board of General Appraisers overruled the protest of the importers against the assessment of duty by the collector of customs at the port of Port Townsend. The Board's opinion reads as follows:

WAITE, General Appraiser. The merchandise consists of 2.328 bags of broken rice, which was assessed for duty as cleaned rice at 2 cents per pound, under tariff act July 24, 1897, c. 11, § 1, Schedule G, par. 232, 30 Stat. 169 (U. S. Comp. St. 1901, p. 1649), and is claimed to be dutiable at one-fourth of one cent per pound, at least as to so much as is small enough, under the provision in the same paragraph for "rice, broken, which will pass through a sieve known commercially as No. 12 wire sieve."

The collector states the reasons for his assessment as follows: "The deputy collector of customs at Seattle reports that, upon the first examination of the samples and testing, but 76 per cent. of the rice passed through the No. 12 sieve, United States standard, and that upon a subsequent test, by prolonged shaking and persistent rubbing, this was increased to 87 per cent. The entire importation was assessed for duty at the highest rate applicable to any part of the importation, following an unpublished decision of the Board of United States General Appraisers, dated January 27, 1902, concerning slack coal."

The decision referred to is an unpublished one, in which the Board held that an importation of coal slack or culm mixed with pea coal was properly assessed at the highest rate applicable to any of the merchandise, for the reason that there was no separation of the various grades. That decision was undoubtedly correct in its statement of the law, but if the Board had before it only the statement of the collector as quoted above it would feel obliged to sustain the protest in this case. That officer states that the test made by the customs officers itself established the proportion of broken rice in the importation which would pass through a No. 12 sieve, and we should say that the case was thus brought squarely within the principle adopted by the Supreme Court in United States v. Ranlett, 172 U. S. 133, 19 Sup. Ct. 114, 43 L. Ed. 393, in any event as to 76 per cent. of the rice, which presumably passed through the screen without "prolonged shaking and persistent rubbing."

There are other facts before us, however, which compel a different conclusion. It has been shown by the testimony taken before the Board that the sieve used by the customs officers in making the tests referred to by the collector was not the standard sieve prescribed by the regulations of the Treasury Department for use in classifying broken rice. In the Board's decision in Re Wakem & McLaughlin, G. A. 5,350 (T. D. 24,492), it was held that in view of the existence of different styles of No. 12 commercial sieves, it was proper for the Treasury Department to adopt the sieve mentioned in its order of December 19, 1900 (T. D. 22,680), namely, a sieve made of No. 24 brass wire, either Stubbs or Birmingham gauge. This decision was affirmed on appeal by the Circuit Court for the Northern District of Illinois in Wakem v. United States (C. C.) 147 Fed. 874, T. D. 27,395. The only legal method, therefore, for determining whether broken rice is within the provision therefor in paragraph 232, is by the use of such sieve. It is shown by the testimony that the sieve used by the customs officers at Seattle was a No. 12 sieve made of No. 27 wire, Birmingham gauge. The No. 12 signifies the number of meshes to the inch, and it is apparent that a sieve having 12 meshes to the inch, made of No. 27 wire, which is a smaller size than No. 24, will have larger meshes than the authorized sieve, and will pass more of a given quantity of broken rice than the latter. It is obvious, then, that in both tests made at Seattle an improper method was pursued, and the collector's report can furnish no basis for a finding as to the proportion of broken rice in the importation.

A later test of a small sample from the importation, weighing something less than a pound, was made by the examiner of rice at the port of New York, who testified that but 33⅓ per cent. of it passed through the standard sieve in use at that port. Importers' counsel maintains in his brief, and the Board agrees with him, that this test was of too small a sample to properly determine the quantity of such rice in 2,328 bags. The Board is therefore confronted with a record in which the only evidence of the quantity of broken rice dutia-

ble at one-fourth of one cent per pound which is contained in the importation consists of proof of certain tests. all of which were improper or inadequate. and which vary so widely as to furnish an insufficient basis for a finding as to such quantity. The burden rests upon the importers to show, by a fair preponderance of evidence, the quantity of rice which they contend is dutiable at the lower rate; and as they have failed to do this the Board, with some regret, is compelled to overrule their protest.

Counsel for the protestants objected to the introduction in evidence of the sieve used at Seattle, and of all the testimony which tended to impeach the report of the collector accompanying the protest, and which is quoted above. The Board is clearly of the opinion. however, that the government is not estopped from proving the actual facts connected with the original tests, even though the effect of such proof is to impeach the collector's return.

The protest is overruled, and the collector's decision affirmed.

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

Elmer E. Todd, U. S. Atty.

HANFORD, District Judge. There is manifest injustice in the assessment of duty on the importation which is the subject of litigation in this case, so much so that the .decision of the Board of General Appraisers, overruling the importers' protest, expresses regret. The merchandise on which the duty was assessed consists of 2,328 bags of broken rice, dutiable under paragraph 232 of the Dingley tariff law of 1897 (30 Stat. 169) at the rate of two cents per pound on the portion thereof which will not pass through a sieve known commercially as a No. 12 wire sieve, and at the rate of one-fourth of a cent per pound on the portion which will pass through such a sieve. At the time of entry the collector tested samples of the rice, using a No. 12 sieve made of No. 27 wire, 12 meshes to the inch, and by that test it was found that 76 per cent. passed freely, and that with persistent shaking and rubbing 87 per cent. passed through the sieve. The collector then erroneously exacted duty on the entire importation at the higher rate. The importer protested, and appealed to the Board of General Appraisers. The collector transmitted a report of the test he had made and a sample of the rice which was tested at New York, using a No. 12 sieve made of No. 24 wire, which is the sieve prescribed by an order promulgated by the Secretary of the Treasury for use in appraisements under the paragraph of the tariff law referred to. On that test $33\frac{1}{3}$ per cent. of the sample passed through the sieve. By its decision the Board rejected the test made by the collector on the ground that the sieve used was not the sieve which the Secretary of the Treasury prescribed, and rejected the test made in New York on the ground that the sample was insufficient in quantity for an adequate test, and overruled the protest on the ground that the appellant had failed to prove affirmatively that the rate of two cents per pound was not applicable to the entire importation. and from that decision the importer has appealed to this court.

The evidence submitted for consideration of this court includes samples of the rice selected by a revenue officer of the United States, and the uncontradicted evidence proves that on a fair test of the samples, using a regulation sieve made of No. 24 wire, $47^{11}/_{37}$ per cent. of the rice passed through it. The United States Attorney contends that age

and repeated handling has affected the samples, so that they do not indicate with precision the different grades of the rice at the time of entry; but he has not suggested better means for a fair adjustment. No fault of the importer can be assigned as the cause of any loss to the government by reason of an infinitesimal increase in percentage of fine particles caused by abrasion in handling the samples.

The appellant has attempted to prove by the testimony of hardware merchants that the sieve known commercially as a No. 12 wire sieve is made of No. 27 wire. The evidence, however, proves that No. 12 sieves have 12 meshes to the inch and are made of wire gauged as Nos. 24, 25, 26, 27, and 32. In the case of Wakem v. United States (C. C.) 147 Fed. 874, an attempt was made to obtain a decision recognizing a wire sieve made of No. 32 wire as the lawful sieve prescribed in the tariff law. It is my conclusion that, in order to maintain uniformity in the appraisement of broken rice in the different customs districts, it was necessary to specify the size of wire of which sieves should be made, and that the Secretary of the Treasury was authorized to make the order designating No. 24 wire.

It is conceded that the importation consisted of broken rice, a portion of which will pass through the regulation sieve. Therefore the collector of customs assessed the duty by an improper method, and the importers' protest is valid. United States v. Ranlett, 172 U. S. 133, 19 Sup. Ct. 114, 43 L. Ed. 393; United States v. Bond (C. C.) 161 Fed. 165. The Collector of Customs had the opportunity to determine with accuracy the percentage of the rice dutiable at the different rates, and it is the opinion of the court that the government must be concluded by the tests made of the samples produced, and that duty should be collected at the rate of one-fourth of a cent per pound on $47^{11}/_{37}$ per cent. of the importation, and at the rate of two cents per pound on the remainder.

The court directs that a judgment be entered in proper form as indicated by this opinion.