WATSON BROS. *v.* UNITED STATES (No. 1137).[1]

MICA CUT IN FIGURES.

   The treatment to which the mica of the importation had been subjected was to convert the clear sheets into such figures and patterns as are useful in industry and merchantable. The resulting pieces are dutiable as " cut mica," even though some of these are not exactly true in geometric form and though the sizes are not the standard sizes commonly quoted in trade catalogues.

United States Court of Customs Appeals, October 31, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31384 (T. D. 33217).

   [Affirmed.]

   *William C. Rogers* for appellants.

   *William L. Wemple,* Assistant Attorney General (*Samuel Isenschmid,* assistant attorney, on the brief), for the United States.

   Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The present case relates to certain importations of mica made under the tariff act of 1909. The issue is whether or not the mica in question is " cut mica " within the purview of paragraph 91 of that act.

The appraiser reported that the mica was wholly or in chief part cut to rectangular shape, and he therefore returned the same as cut mica dutiable at 10 cents per pound, plus 20 per cent ad valorem,

---

under paragraph 91, as interpreted in Abstract 20677 (T. D. 29559). Duty was assessed upon the importations in accordance with this return.

The importers duly protested, claiming the mica to be " unmanufactured or rough-trimmed only," and therefore dutiable at 5 cents per pound and 20 per cent ad valorem. The protest was submitted to the Board of General Appraisers and was overruled, from which decision the importers now appeal.

The following is a copy of the provisions relating to mica in the tariff revision of 1883 and those following:

Act of March 3, 1883:

FREE LIST. Mica and mica waste.

Act of October 1, 1890:

202.   *   *   *   Mica, thirty-five per centum ad valorem.

Act of August 27, 1894:

167¾. Mica, twenty per centum ad valorem.

Act of July 24, 1897:

184. Mica, unmanufactured, or rough-trimmed only, six cents per pound and twenty per centum ad valorem; mica, cut or trimmed, twelve cents per pound and twenty per centum ad valorem.

Act of August 5, 1909:

91. Mica, unmanufactured, or rough-trimmed only, five cents per pound and twenty per centum ad valorem; mica, cut or trimmed, mica plates or built-up mica, and all manufactures of mica or of which mica is the component material of chief value, ten cents per pound and twenty per centum ad valorem.

At the trial of the present issue before the board the parties submitted samples of the mica in question and also introduced three classes of evidence. The first consisted of the oral testimony of three witnesses called by the importers at the present trial. The second consisted of the recorded testimony taken in the Watson case, Abstract 19340 (T. D. 29159), wherein certain protested mica was held by the board not to be cut mica under the act of 1897. The third consisted of the recorded evidence in a second Watson case, Abstract 20677 (T. D. 29559), wherein certain protested mica was held by the board to be cut mica under the same act.

The return of the board to this court in the present case reports that the exhibits referred to in the testimony taken in the two cases last named had been withdrawn, but it is stated by the board that the merchandise involved in the second case is of the same character as that in this case. At another point in the record the importers submitted testimony tending to prove that the mica covered by the protest in the first case was similar to that involved in the second case, the Government's counsel, however, claiming the contrary.

Two other sources of information may be here referred to. One is the Myers case (T. D. 30421; 1 Ct. Cust. Appls., 257; T. D. 31301), wherein certain mica was held by the board and by this court not to be cut mica under the tariff act of 1909. The other is the extensive presentation of the entire subject of mica to the Ways and Means Committee. (Tariff Hearings, 1908–9, vol. 3, pp. 2461 *et seq.*, and vol. 8, pp. 7984 *et seq.*)

The present issue, as already stated, relates to the meaning and application of the term " cut mica " as used in paragraph 91 of the tariff act of 1909. Upon this subject the importers contend that the term " cut mica," as used by the trade in this country, properly includes only such mica as is cut to the sizes quoted in " the standard mica list," which is " used all over the country by foundries and jobbers." These quoted sizes, they claim, run only on the inches, quarters, halves, and three-quarters. And the importers furthermore especially insist that mica can not in any event be called " cut mica " unless at least it is exactly cut to some regular geometric shape or size and is thereby converted into a finished product. The importers contend that the present importations do not comply with either of the preceding requirements; they claim that the mica composing them is not cut to trade-list sizes nor to any regular geometric shapes, nor are the same finished products.

The board found upon the evidence against the claim of the importers as to the trade meaning of the term " cut mica," and also against their claim as to the condition and characteristics of the product now at bar. The board found that the present article is, in fact, cut to regular shapes and definite sizes, capable of use in the various applications of finished mica. The board furthermore held upon the testimony that the importations were cut mica within the trade usage of that term, regardless of whether or not their various sizes were listed in the usual jobbers' trade lists. The protests were therefore overruled.

Inasmuch as the board held the present article to be identical with that covered by its decision in Abstract 20677 (T. D. 29559), the following extract from that decision is given as a more extended exposition of the subject:

The merchandise consists of mica which has been cut by a knife or scissors into rectangular sheets or plates. * * * The samples before us disclose sheets of mica cut by a knife or scissors to true geometric shape or definite size, and by assorting are found to be ready for use as imported for electrical, insulating, and the other purposes for which merchantable and recognized " cut mica " is used. The evidence shows that rough-trimmed or thumb-trimmed mica, as uniformly recognized in the trade, is mica from which the rough circumferences have been removed. To accomplish this a sickle or the hand of the operator alone is used; whereas to obtain the cut and trimmed mica the article, after being split, is cleanly cut to a definite shape or size and is capable

of use in that form for electrical work, stoves, smoke shades, or lamp chimneys. Each particular use requires a particular size and shape, and while the published price lists of dealers in mica quote certain sizes, many other sizes than those embraced in said standard lists are cut as each consumer may demand the same for his particular purposes. All of the sheets before us are finished and ready for use, and the trade recognizes them as mica sheets cut and trimmed. The importers do not deny that this mica is cut and trimmed, but they contend that it is not cut to some true and exact size referred to in the trade circulars. There are many sheets in this lot which do measure exactly up to the size called for by the said lists, and even if all are not of this character, in any event the importer's contention can not be sustained. The rule is well established that an admixture of merchandise subjects the whole to the highest rate provided for any portion of the same. United States *v.* Ranlett (172 U. S., 133).

It should be noted that the foregoing decision under the act of 1897 was brought to the attention of the Ways and Means Committee at the tariff hearings preparatory to the act of 1909. (See Tariff Hearings, 1908–9, vol. 8, p. 7985, where the same is copied in full.) The statutory term thereby construed appeared without change in the revision of 1909.

Upon a review of the testimony contained in the record and an examination of the exhibits the court finds no reason to disagree with the foregoing decisions of the board. It is certain that the pieces of mica now in question have not resulted from processes simply designed to trim off imperfect edges or to strip the article of foreign adhesions. On the contrary, they have evidently been cleanly cut with the purpose of producing pieces having geometric shapes as patterns fit for certain industrial uses. In some instances this effort has not perfectly succeeded and the resulting pieces are not exactly proportioned, but in most instances the pieces are cut to true geometric forms. The present article, therefore, is far removed from the mica, " irregular in shape " and " very uneven in form," which was involved in the Myers case above cited. In that case the object in trimming the mica had been " to remove the rough circumferences, lop off all foreign matter, cut out all cracks, and thus reduce the sheets to clear mica." In the present case the evident object of the treatment has been to cut clear sheets of mica into such figures and patterns as are useful in industry and merchantable in trade. Therefore the resulting pieces when imported are dutiable as cut mica within the meaning of the tariff act, even though some of them are not exactly true in geometric form, and even though the sizes are not the standard sizes commonly quoted in trade catalogues. The pieces thus imported are nevertheless finished articles and are subject to the duty assessed upon them by the collector in this case.

The decision of the board sustaining the assessment is therefore *affirmed.*