## UNITED STATES *v.* MYERS & Co. (No. 2172).[1]

1. SEGREGATION.

   It is the established rule that where an importation consists of two distinct and segregable tariff entities, which, however, are attached to one another or commingled together, they should nevertheless be separately treated in the assessment, each accordingly bearing the rate of duty applicable to it, or admitted free of duty if entitled thereto.

2. VEAL WITH SKIN ON.—SEGREGATION.

   Where veal was imported dressed except for the skins, it appearing that a separate determination of the weight of the veal could have been had, it was error for the collector to assess the gross weight as veal under paragraph 14, emergency tariff act of 1921. The skins should have been admitted free of duty under paragraph 604, tariff act of 1913.

United States Court of Customs Appeals, November 13, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44861.

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Marcus Higginbotham, jr.*, and *Samuel M. Richardson*, special attorneys, of counsel), for the United States.
*Allan R. Brown* for appellees.

[Oral argument October 4, 1922, by Mr. Richardson and Mr. Brown.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of the carcasses of calves with the skins on, these according to the collector's description being "hog-dressed—that is, dressed with the exception of removing the skins." They were imported into this country in that condition from Canada. It appears from the testimony that they were intended for sale in the city of New York, and that imported carcasses of calves could find no buyers in that market at that time unless the skins were still on. This is said to have been a "demand of the customer" there, and accordingly for a number of years prior to this importation the importers had shipped no veal carcasses into that market except with the skins still on.

---

[1] T. D. 39322.

At the time of the present importation the emergency tariff act of 1921 was in effect, section 14 of which reads as follows:

14. Fresh or frozen beef, veal, mutton, lamb, and pork 2 cents per pound. Meat of all kinds, prepared or preserved, not specially provided for herein, 25 per centum ad valorem.

At the same time paragraph 604 in the free list of the tariff act of 1913 was also in effect reading as follows:

(Free list)

604. Skins of all kinds, raw, and hides not specially provided for in this section.

The importers entered the present merchandise for duty as "dressed calves," first setting out the gross weight of the carcasses with the skins on, and next stating the estimated weight of the skins taken separately. The net weight of the carcasses, less the skins, was returned in the entry for assessment as veal, dutiable at 2 cents per pound under the emergency tariff provision aforesaid, while the skins were claimed to be free of duty under paragraph 604 of the tariff act of 1913, as above copied.

It may be noted that in the invoice also the merchandise was described as "dressed calves," with a statement of the gross weight, followed by a statement of the "estimated weight of the veal" and of the skins taken separately.

The collector, however, when assessing the merchandise with duty held that the carcasses as imported with the skins on were entireties within tariff contemplation, and that therefore the entire gross weight thereof was subject to assessment as veal at the rate of 2 cents per pound. Duty was taken upon the importation accordingly.

The importers thereupon filed their protest against the assessment, claiming as aforesaid that duty should have been assessed at the rate of 2 cents per pound upon the net weight of the carcasses, after deducting the weight of the skins as set out in their entry. They claimed that the carcasses consisted of veal and skins as separate tariff entities and that these were segregable from one another, and that while the veal was dutiable as aforesaid under paragraph 14, the skins were free of duty according to paragraph 604.

The protest was submitted upon evidence to the Board of General Appraisers and was sustained. The Government appeals from that decision.

The issue thus submitted is a narrow one, the only question being whether the carcasses as imported with the skins on were tariff entireties and liable to assessment upon their gross weight under the name of veal, or whether for duty purposes the skins should be regarded as segregable tariff entities and granted free entry, leaving the residue only to be assessed as veal.

We may note at this point that the deputy collector who made the assessment in question reported that "on account of the skins being

left on the veal this office assessed duty on the gross weight of the carcasses, making no allowance for the skins for the reason of their not being able to be properly weighed without being removed from the carcasses." In the same report, however, it was stated that the estimated weight of the skins was 10 per cent of the gross weight of the carcasses with the skins attached. It may be noted also that the collector of the port of importation reported that the skins were "segregable from the veal." And at the trial before the board it was formally stipulated by the respective counsel that the average weight of the skins was 10 per cent of the gross weight of the carcasses. While it is true, therefore, that in this instance the weight of the skins could not be ascertained by the collector by means of stripping them from the carcasses and weighing them, nevertheless it was practicable to reach a correct estimate of their weight with a sufficient measure of accuracy, such indeed as must suffice in many instances of customs administration.

We regard it as certain that in common parlance the word "veal" is applied only to the butcher meat of a calf's carcass and not to the skin which covers it. The Standard Dictionary defines the word as "The flesh of a calf when killed and used for food." There is no evidence whatever in the record tending to establish a different commercial or trade definition for the term, but, on the other hand, in so far as the evidence touches upon that subject it is disclosed that calves' carcasses with the skins still attached are quoted, bought, and sold as consisting in fact of two commodities instead of one. It is of course within common knowledge that the calfskin is always removed from a carcass before any part of the latter is sold as veal. In tariff nomenclature also veal and calfskins have long been treated as separate entities. We need not cite specific references in support of this statement.

In view of these considerations we think that the question herein submitted finds its answer in the established rule that where an importation consists of two distinct and segregable tariff entities, which, however, are attached to one another or commingled together, they should nevertheless be separately treated in the assessment each accordingly bearing the rate of duty applicable to it, or admitted free of duty if entitled thereto. In the present case, therefore, the veal of the carcasses should have been assessed with duty as such at the rate of 2 cents per pound, while the skins should have been admitted free of duty.

The following extract from the decision of this court by Smith, Judge, in the case of United States *v.* Waterhouse (1 Ct. Cust. Appls. 353, 359; T. D. 31452) is directly in point:

That dutiable goods, specifically named, coming in mixed with others bearing another rate of duty or entitled to free entry and practicably separable can be segre-

gated seems to have been finally decided in the case of United States *v.* Ranlett (172 U. S. 133). In that case, so far as examined by the customs examiner, from 20 to 25 per cent of American bags entitled to free entry came mixed with 75 to 80 per cent of foreign bags which were dutiable. Due to this mixture of dutiable and nondutiable bags the appraiser reported all bags as dutiable, and the collector so assessed them · The Supreme Court decided that one-fourth of the duties paid should be refunded Prior to the Ranlett case the principle of segregation therein enunciated seems to have been recognized both by the board and the courts. See United States *v.* Brewer (92 Fed. 343); Weil *v.* United States (115 Fed. 592); United States *v.* Helmrath (135 Fed. 912); United States *v.* Myers (140 Fed. 648). The case of the United States *v.* Myers is of especial value as showing the judicial tendency to permit of the assessment of mixed goods carrying different rates of duty. In that case wood pulp subject to countervailing duty was mixed with wood pulp which was not subject to such duty. The court, affirming the Board of General Appraisers, held that inasmuch as the percentage of it subject to countervailing duty could be established, although the pulp could not be segregated, separate duties might be imposed.

To the same effect also is the decision of this court in the case of United States *v.* Amendola (5 Ct. Cust. Appls. 516; T. D. 35156), the merchandise therein being certain cones which were imported with their nutlike seeds still attached to them just as they grew. It appearing that the cones and nuts were separate commodities and segregable, the court held that they should be separately classified for duty purposes. Accordingly the nuts were held to be dutiable and the cones free.

See also Consolidated Elevator Co. *v.* United States (8 Ct. Cust. Appls. 268; T. D. 37536), and cases cited.

The decision of the board is accordingly *affirmed.*