(C. D. 148)

Enzinger Union Corp. *v.* United States

United States Customs Court, Second Division

(Decided April 14, 1939)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of 10 hydraulic presses and 10 filters. Duty was levied thereon at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as machines and parts thereof not specially provided for, plus a tax of 3 cents per pound under section 601 (c) (7) of the Revenue Act of 1932 as articles composed in chief value of copper.

The collector's classification of the merchandise under said paragraph 372 is not challenged, the plaintiff limiting his claim to the allegations (1) that the articles are not entireties, as classified by the collector, and (2) that the articles contained in cases 2000, 2005, 2010, 2015, 2020, 2025, 2030, 2035, 2041, and 2047 contain less than four per centum of copper by weight and are, therefore, not subject to the provisions of section 601 (c) (7) of the Revenue Act of 1932 and consequently not taxable thereunder.

At the hearing in this case held in Buffalo, N. Y., on April 25, 1938, it was stipulated by and between counsel for the respective parties that the hydraulic presses contained in the above-enumerated cases on the invoice weighed 10,580 pounds and that the copper contained therein was less than 4 per centum by weight.

Certain photographs of the imported articles were admitted in evidence as Illustrative Exhibits A, B, and C. In addition to said illustrative exhibits the plaintiff offered in evidence the testimony of Floyd C. Stephens, its secretary. No evidence was introduced by the Government.

The said witness testified that he had charge of the plaintiff's factory and was familiar with the merchandise here imported; that the filters were primarily used for the filtration of beer; that each consisted of two heavy frames with screw spindles between which were a series of heavy bronze cells or plates about 2 inches deep into each of which is placed a cake of filter mass, the entire aggregation of cells being pressed together by means of the screw spindle; that the filter mass is composed of pure cotton fiber specially prepared for the filtration of beer; that the hydraulic press is used for the purpose of pressing the filter mass before it is filtered; that the hydraulic presses and the filters are separate and distinct entities; that they are not physically connected when in use and were not connected when imported; that when the press is employed the filter is not used, and vice versa; that from 1 to 10 filters are used with each press, depending on the size of the brewery; that the pressing and the filtering are usually done in separate rooms; that sometimes the presses and filters are sold together and sometimes separately; and that they are described in the company's catalog as separate articles.

Upon this record we are of the opinion that the collector erred in treating each press and filter as constituting an entirety.

In *G. W. Sheldon & Co.* v. *United States*, T. D. 42315, 52 Treas. Dec. 48, this court had before it certain articles described by the appraiser as parts of a complete made-to-specifications machine for generating electricity, consisting, among other things, of certain turbine steam engines. In holding that the collector erred in treating the steam engines and the other articles as an entirety and classifying the whole importation as constituting a machine not specially provided for, the court said:

\* \* \* we are convinced that the importation as a whole cannot properly be deemed an entirety for tariff purposes. \* \* \*

\* \* \* \* \* \* \*

\* \* \* in the present case it is conclusively shown that the engines in question have in no sense lost their identity as such. \* \* \* This fact can not be ignored merely because the whole is operated as a unit \* \* \*.

The applicable rule of law in the present case is well stated in *United States* v. *Myers* (11 Ct. Cust. Appls. 409; T. D. 39322). There the importation consisted of carcasses of calves with the skins on. In holding the skins and veal separately classifiable for tariff purposes, the court said:

\* \* \* we think that the question herein submitted finds its answer in the established rule that where an importation consists of two distinct and segregable tariff entities, which, however, are attached to one another or commingled together, they should nevertheless be separately treated in the assessment each accordingly bearing the rate of duty applicable to it, or admitted free of duty if entitled thereto.

In *Columbia Shipbuilding Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T. D. 39085, the involved merchandise consisted of certain steam engines and fans or blowers which were designed to be operated

together for supplying a forced draft to boilers of vessels. They were classified for duty as entireties at the rate of 20 per centum ad valorem under paragraph 167 of the Tariff Act of 1913 as manufactures of metal not specially provided for. It was claimed that the steam engines were separately dutiable under the *eo nomine* provision therefor in paragraph 165 of said act. As imported the engines and fans were not connected, but when in use they were coupled together and served an auxiliary purpose in connection with the main boiler of the vessel. The power which rotated the fan was transmitted to it by means of the steam engine. Each engine was within itself a complete steam engine, and each fan was a complete blower. The court said:

\* \* \* we conclude that the engines and fans as imported were not entireties, notwithstanding the fact that they were designed to be operated together; for when the articles are installed for use each retains its own name and essential character, and neither one becomes in fact a part of the other. Nor do they then merge or unite so as to form together a new or distinct article having a different name or character. When in use the engine simply performs the function of an engine and retains its name as such, and the fan performs the function of a fan only and retains its separate name also.

In the instant case the hydraulic presses and filters were not connected when in use. As a matter of fact, when one functions the other does not. Moreover, according to the uncontradicted evidence the presses and filters were usually operated in separate rooms.

Upon the established facts and the law applicable thereto we hold that inasmuch as the hydraulic presses contained in the cases above enumerated contain less than 4 per centum by weight of copper, they are not subject to any tax imposed by said section 601 (c) (7) of the Revenue Act of 1932. That claim of the plaintiff is therefore sustained, but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.