(C. D. 1928)

DURST MFG. CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 23, 1957)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Presently before the court is an importation of merchandise, described on the consular invoice as plumbing parts, consisting of 1,000 sets of sprinkler tops and 1,000 bases which, when assembled, are used as lawn sprinklers.

The collector of customs classified the importation as articles of metal, not specially provided for, pursuant to the provisions of paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and assessed duty thereon at the rate of 22½ per centum ad valorem.

Plaintiff, by its protest, invokes the following paragraphs of the statute providing for lower rates of duty:

Said merchandise is properly dutiable at 13¾% under Para. 372 or at 5% under Para. 327, or at 12½% under Para. 319 (a), or at 12½% or 17½% under Para. 390.

At the trial, however, plaintiff limited its protest to the claim that the sprinkler tops should be classified as electroplated sprinkler tops, in accordance with the terms of paragraph 390 of said act (19 U. S. C. § 1001, par. 390), as modified by the Torquay protocol to said general agreement, 86 Treas. Dec. 121, T. D. 52739, the sprinkler bases not being here involved.

The pertinent text of the applicable statutes is here set forth.

Paragraph 397, as modified by the General Agreement on Tariffs and Trade, *supra*—

Articles or wares not specially provided for, whether partly or wholly manufactured:

    \*      \*      \*      \*      \*      \*      \*

    Composed wholly or in chief value of iron, steel, \* \* \* or other metal \* \* \*:

    \*      \*      \*      \*      \*      \*      \*

    Other (except slide fasteners and parts thereof)_____22½% ad val.

Paragraph 390, as modified by the Torquay protocol, *supra*—

Bottle caps of metal, collapsible tubes, and sprinkler tops:

    \*      \*      \*      \*      \*      \*      \*

\* \* \*, electroplated, \* \* \*_____17½% ad val.

The only witness in the case, Norman Redlich, was called on behalf of the plaintiff. Mr. Redlich testified that, since June 1950, he had been secretary of the plaintiff corporation which "imports, manufactures and distributes plumbing specialties, lawn sprinklers, garden accessories, household utensils."

Through this witness, a sample of the item in dispute was received in evidence as exhibit 1, which, it was agreed by the parties, is electroplated.

Redlich stated that he had designed the article in 1952 and had been principally responsible for its purchase and in arranging for the sales organization to sell it in this country; that he personally had sold, assembled, and distributed the article for his company.

He testified that exhibit 1 "is a sprinkler top used on a sprinkler for lawns; it is screwed into a sprinkler base and when the water goes through the arm and out those nozzles [ind.] it generates water pressure which turns that sprinkler top around and sprinkles the lawn." This, he stated, is the only known use for the article.

The witness produced an illustration of the sprinkler top attached to a base, which was received in evidence as exhibit 2.

When asked why the term "sprinkler top" was used to identify exhibit 1, Redlich replied:

It is the only term by which that particular product is ever used, sir, ever described, ever called; I have never known it described by any name other than sprinkler top.

*      *      *      *      *      *      *

By the people who manufacture it, purchase it, sell it, distribute it, the consumer calls it a sprinkler top.

The record discloses that the sprinkler tops are sometimes sold separately from the bases and that the bases are at times sold separately from the tops. The articles were separately packed and their values separately itemized on the invoice. Furthermore, the sprinkler tops and bases are produced by two different manufacturers in Japan, and the bases are not always imported with the sprinkler tops.

In support of its contention that the sprinkler tops are separately dutiable, plaintiff points to the distinction between the doctrine that where two different articles, neither of which is specifically provided for in the tariff act, constitute, in their imported condition, a complete article of commerce, having a new name and use, they are treated for tariff purposes as an entirety, and, on the other hand, the legal principle that where one of the articles of companion merchandise is *eo nomine* provided for in the tariff act, it will be accorded separate classification, in the absence of a tariff designation which clearly includes the combination.

Reference is made to the case of *Kwong Yuen & Co.* v. *United States*, 73 Treas. Dec. 297, T. D. 49409, wherein certain teakwood stands were held to be separately dutiable from certain ornamental china or jade articles which were imported with the stands. In that case, the court thoroughly examined and reviewed numerous judicial authorities on the subject of entireties and made this significant observation:

Another exception to the general rule occurs when one of the articles of imported merchandise packed together with another and intended to be used in conjunction therewith is *eo nomine* provided for in the tariff act. This exception, however, is not applicable where the provision for the combination of the articles plainly indicates that such *eo nomine* article is to be included within the classification covering the combination. * * *

We are of the opinion that the instant case is not one where there is a provision for the combination of the articles indicating that the *eo nomine* article is to be included within a classification covering the combination.

Plaintiff also cites the case of *United States* v. *Borgfeldt & Co.*, 7 Ct. Cust. Appls. 367, T. D. 36909, wherein certain metal pencilholders, with wood pencils attached, were held to be subject to separate classifications, the metal holders as articles of metal and the wood pencils as "pencils of wood * * * filled with lead."

Note also *United States* v. *Myers & Co.*, 11 Ct. Cust. Appls. 409, T. D. 39322, wherein the carcasses of calves, dressed, with the exception of removing the skins, were separately dutiable from the skins.

Defendant insists that the sprinkler tops in controversy are not within the meaning and intent of paragraph 390, as modified, *supra*, and urges the court to engage in external considerations upon the assumption that the language of paragraph 390 is ambiguous. In other words, our attention is invited to Tariff Information Surveys of 1913, 1920, 1929, and 1948 in order to place a limited construction upon the term "sprinkler tops," as it appears in paragraph 390. To do so, however, brings into focus the question whether we would be justified in finding or creating an ambiguity where none is apparent. The courts have stated many times "that where no doubt exists as to the meaning of a term, extraneous aids must not be resorted to, for there is no need of construction where no ambiguity exists." *Thorens, Inc.* v. *United States*, 31 C. C. P. A. (Customs) 125, C. A. D. 261.

The Supreme Court of the United States, in *Railroad Commission of Wisconsin et al.* v. *Chicago, Burlington & Quincy Railroad Company*, 257 U. S. 563, said that extraneous aids "are only admissible to solve doubt and not to create it."

In *Akawo, Morimura & Co.* v. *United States*, 6 Ct. Cust. Appls. 379, T. D. 35921, the court restated the well-settled principle that—

* * * the intent of the lawmaker is the law, but to ascertain that intent courts are bound to have recourse first to the words of the law, and if their meaning be clear and unambiguous there is no sound reason why that meaning should be rejected and a search diligently made for some signification other than that which has been clearly expressed. * * *

The court further pointed out, however, that—

* * * if * * * a literal interpretation would necessarily lead to an absurd result, it might well be doubted whether the real intention of the lawmaking power was expressed by the language used, and under such circumstances other aids than the terms of the law might be invoked to ascertain the congressional intent. * * *

See also *United States* v. *Esso Standard Oil Co.*, 42 C. C. P. A. (Customs) 144, C. A. D. 587, and *United States* v. *Palm, Fechteler & Co.*, 4 Ct. Cust. Appls. 1, T. D. 33195.

Since it appears from the record that the item in controversy was designed as a sprinkler top and was bought, sold, and known exclusively as a sprinkler top and is, more often than not, imported separately, we find no compelling reason for excluding it from classification within the unambiguous provision of said paragraph 390 for electroplated sprinkler tops.

We have considered the various authorities cited by defendant on the subject of entireties, but find it unnecessary to review them here.

On the undisputed facts of record and for the foregoing reasons, we find and hold that the involved articles, being electroplated, should be classified in paragraph 390, as modified, *supra*, as "sprinkler tops: * * * electroplated" and dutiable at 17½ per centum ad valorem.

Judgment will be entered sustaining the protest to the extent indicated.