(C.D. 4257)

Border Brokerage Co., Inc. *v.* United States

United States Customs Court, Third Division

(Decided August 20, 1971)

*Glad & Tuttle* (*George R. Tuttle* and *Edward N. Glad* of counsel) for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Herbert T. Posner, Gilbert Lee Sandler*, and *Andrew P. Vance*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge;
RICHARDSON, J., concurring in part and dissenting in part

ROSENSTEIN, Judge: The merchandise involved in the six consolidated protests herein consists of uncleaned tree seeds, cone particles and stem ends stipulated to be "similar in all material respects to the uncleaned tree seeds"[1] in *United States* v. *Border Brokerage Co.*, 54 CCPA 56, C.A.D. 905 (1967), which record is incorporated herein and upon which the case was submitted.

The importations were assessed for duty under paragraph 764, Tariff Act of 1930, as modified by T.D. 55816, as "Other garden and field seeds: * * * Tree and shrub", at the rate of 1½ cents per pound. Plaintiff, relying upon the opinion in the incorporated case, claims that only the tree seeds are dutiable under paragraph 764 and that the remaining material is constructively segregable and entitled to duty-free entry under paragraph 1722, Tariff Act of 1930, as "vegetable substances, crude or unmanufactured, not specially provided for".[2]

The government contends that the cone particles and stem ends, which have no commercial value, are merely "trash" or "impurities in seed" for which an allowance is prohibited by paragraph 763 of said Act, which provides in pertinent part:

> Grass seeds and other forage crop seeds: * * * *Provided*, That no allowance shall be made for dirt or other impurities in seed of any kind.[3]

---

[1] It is apparent from their briefs that the parties intended the stipulation to include *all* the merchandise (seeds, cone particles and stem ends) involved in the incorporated case, and we shall accord it that meaning.

[2] Two alternative claims for classification under paragraphs 731 and 1555, Tariff Act of 1930, which were not referred to at the trial or in the brief, are deemed abandoned and hereby dismissed.

[3] This proviso is not confined to the seeds provided for in paragraph 763 but invades every other paragraph of the act so that any allowance for dirt or other impurities in seeds of any kind may not be made. *Pacific Vegetable Oil Corp.* v. *United States*, 15 Cust. Ct. 161, C.D. 964 (1945).

and that they do not constitute "merchandise" which is segregable and separately classifiable for customs purposes under section 508 of said Act.

Section 508, as amended by the Customs Simplification Act of 1953, provides in pertinent part:

COMMINGLING OF GOODS.

(a) Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise cannot be readily ascertained by the customs officers (without physical segregation of the shipment or the contents of any entire package thereof), by one or more of the following means: (1) Examination of a representative sample, (2) occasional verification of packing lists or other documents filed at the time of entry, or (3) evidence showing performance of commercial settlement tests generally accepted in the trade and filed in such time and manner as may be prescribed by regulations of the Secretary of the Treasury, and if the consignee or his agent shall not segregate the merchandise pursuant to subsection (b), of this section, then the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof.

(b) Every segregation of merchandise made pursuant to this section shall be accomplished by the consignee or his agent at the risk and expense of the consignee within thirty days after the date of personal delivery or mailing, by such employee as the Secretary of the Treasury shall designate, of written notice to the consignee that the merchandise is commingled, * * *. Every such segregation shall be accomplished under customs supervision, * * *.

The facts and the issue presented in *Border Brokerage, supra*, were set out by the appellate court, 54 CCPA at 57, as follows:

* * * The importer, Manning Seed Co., acquires "hemlock, spruce, cedar, and balsam cones" in Canada. According to the undisputed facts of record, the cones are crushed in certain machinery in Canada in order to free the seeds from the cones. The imported material consists of uncleaned seeds, cone particles, and the stem end of the cones. After importation the uncleaned seeds are separated from the other materials. * * *

The dispute here concerns the uncleaned tree seeds and cone particles and stem ends at the time of importation, prior to any treatment in the United States. The court below found, and appellant here agrees, that the "tree seed constitutes 40 percent of the gross weight and * * * the woody residue 60 percent thereof," and these respective proportions are readily ascertainable, par. 508. The "woody residue," consisting of cone particles and cone stem ends, is burned by the importer upon separation. According to the court below, the "woody residue" has no "commercial value." Appellant does not dispute that the woody residue is a "vegetable

substance," rather, it is argued that for customs purposes this residue must be considered as "impurities" in the seed for which no allowance can be made, par. 763, rendering pars. 508, 1722, inapplicable.

Thus the narrow question presented is whether the court below erred in finding, as a matter of law, that the "woody residue" was not an "impurity" in the seed. * * *

The court noted that ordinary pine cones have been held to be free of duty as a crude vegetable substance, *Otto G. Mayer & Co.* v. *United States*, 2 Syn. Treas. Dec. 534, T.D. 20038 (1898) ; *Koeller-Struss Co.* v. *United States*, 58 Treas. Dec. 947, Abstract 12955 (1930), as were "broken pieces" of nut shells, *E. Berghausen Chemical Co.* v. *United States*, 60 Treas. Dec. 725, T.D. 45221 (1931) ; that, where the collector, in a shipment involving pine cones having "seeds or nuts * * * between the layers of the cones", separated the seeds or nuts from the cones, placing no duty upon the cones, the Board of General Appraisers stated that the action of the collector in separating the items was warranted, although observing that it would not pass upon whether the cones should be assessed for duty as that question was not before it, *Van Dyk & Catreva* v. *United States*, 20 Treas. Dec. 1043, T.D. 31616 – Abstract 25595 (1911) ; and that, in *P. Garguilo & Bro.* v. *United States*, 21 Treas. Dec. 43, T.D. 31757 – Abstract 26085 (1911), involving "pine-tree cones" and "kernels", duty was assessed upon the weight of the kernels alone, which constituted 20 percent of the gross weight.

The court then reviewed in detail *United States* v. *Amendola*, 5 Ct. Cust. Appls. 516, T.D. 35156 (1915), involving pine cones imported "with their nutlike seeds still attached to them", wherein duty was assessed upon the aggregate weight of the cones and nuts. The importer had claimed that duty should have been assessed on the weight of the nuts alone and that the pine cones, which were valueless, were entitled to duty-free entry under paragraph 630, Tariff Act of 1909, as "vegetable substances, crude or unmanufactured, not otherwise specially provided for". Observing that the cones "would be free if imported alone", the court held therein that the nutlike seeds were dutiable as "nuts of all kinds, shelled or unshelled, not specially provided for" under paragraph 283, Tariff Act of 1909, which also provided that "no allowance shall be made for dirt or other impurities in nuts of any kind". It also found that the cones were not dirt or other impurities, but were segregable for duty purposes, stating (5 Ct. Cust. Appls. at 518–19) :

> It is equally improper to describe the cones as "dirt or other impurities in" the nuts. They are obviously not "dirt," nor do they respond to the description of "other impurities in" the nuts. In the case of the present importations the cones weigh four times as much as the nuts, and are more bulky than the nuts in even a

greater proportion. They can hardly be described as "impurities in" the nuts which they thus hold and carry. It is true that the cones and nuts are imported as entireties; nevertheless it is administratively practicable to ascertain the net weight of the nuts alone. At least there is nothing in the present record which contradicts the testimony of the importer to that effect. There seems, therefore, to be no reason why they should not be separated for duty purposes, and the nuts assessed alone, they being in fact the only dutiable portion of the importation.

After quoting the above passage, plus others, from *Amendola*, the court, in *Border Brokerage*, rejected the government's attempt to distinguish that case, stating (54 CCPA at 60–61):

\* \* \* The sole permissible distinction on the facts of record as to the cones here and those in *Amendola* is that here we have crushed cones and there it was whole cones.

Second, the appellant's attempts to both distinguish *Amendola* from the facts of record here and harmonize it with other precedents are too little and too late. The court in *Amendola* expressly stated it was dealing with "valueless cones" which were either "thrown away" or "burned," just as here. It did not require that the importer show that the cones had "a commercial value in their imported condition," as the appellant infers, nor do we. We are therefore not persuaded that the court below erred when it did not attach significance to the fact that here the cones are crushed and not whole where in both instances the cone material is considered valueless.

\* \* \* \* \* \* \*

We find that the court below cited ample precedent to establish that the cones were crude vegetable substances, n.s.p.f., entitled to duty-free entry, and that as presented below segregation was not contrary to law.

The court also refused to consider appellant's argument, raised for the first time on appeal, that "valueless" substances or materials cannot be segregated for customs purposes, stating, at page 61:

\* \* \* This clearly raises a substantial question as to the proper construction of section 508 which does not appear to have been dealt with below.

Without the views of the court below, we do not consider that question to be presented here. It is not our function to make the initial evaluation of the huge amount of material offered by appellant.

Defendant renews herein its contention that the valueless portions of the subject importations are "impurities in seed" for which allowance is proscribed by paragraph 763, asking us, in effect, to depart from the holding in the incorporated case. In the absence of additional evidence or cogent argument demonstrating clear error therein, the decision of our appellate court, under the principle of *stare decisis*,

is controlling on this issue. *R. J. Saunders & Co., Inc.* v. *United States*, 54 CCPA 29, C.A.D. 898 (1966) ; *United States* v. *Dodge & Olcott, Inc.*, 47 CCPA 100, C.A.D. 737 (1960).

Defendant also raises the issue, not fully considered by the court in the incorporated case, whether, under the provisions of section 508 or under the so-called "readily ascertainable" doctrine, a commingled substance of no commercial value may be segregated, either actually or constructively, and classified separately from the merchandise with which it is packed or mingled.

The "readily ascertainable" doctrine, which was developed by judicial decision prior to the enactment of section 508 and its predecessor, section 507, Tariff Act of 1922, is described in *United States* v. *Myers & Co.*, 11 Ct. Cust. Appls. 409, 411, T.D. 39322 (1922) (which cites the *Amendola* decision) as

> * * * the established rule that where an importation consists of two distinct and segregable tariff entities, which, however, are attached to one another or commingled together, they should nevertheless be separately treated in the assessment each accordingly bearing the rate of duty applicable to it, or admitted free of duty if entitled thereto. * * *

See also *United States* v. *Ranlett and Stone*, 172 U.S. 133 (1898) ; *United States* v. *S. Schapiro & Sons*, 24 CCPA 343, T.D. 48771 (1937) ; *United States* v. *Waterhouse*, 1 Ct. Cust. Appls. 353, T.D. 31452 (1911).

Thus, where the respective materials are readily ascertainable by the customs officers, it is their duty to so ascertain them and return the goods for duty, or free of duty, accordingly. And if the officers do not take such action, the importer may file a protest, and upon presentment of proof that the goods are readily ascertainable, obtain relief through the court. *United States* v. *E. E. Holler*, 28 CCPA 124, C.A.D. 133 (1940). The onus of separation does not rest upon the importer. *United States* v. *M. J. Brandenstein & Co.*, 17 CCPA 480, T.D. 43941 (1930) ; *United States* v. *Washburn-Crosby Co.*, 14 Ct. Cust. Appls. 243, T.D. 41874 (1926) ; *Universal Laboratories* v. *United States*, 35 Cust. Ct. 23, C.D. 1715 (1955).

The *value* of the involved merchandise has been held to bear no relation to the question whether the commingled goods are separately dutiable. In *Midland Linseed Products Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 101, T.D. 38361 (1920), certain merchandise assessed by the collector at 20 cents per bushel as linseed was found by the Board of General Appraisers to consist in part of linseed together with a segregable admixture of screenings, which were held to be separately dutiable at 10 per centum ad valorem as a nonenumerated manufactured article. The board directed the collector to reliquidate the

entries accordingly, specifying the exact percentage of screenings for each entry, but it refused to fix or certify the dutiable value of the screenings. The court affirmed the board's decision, stating (10 Ct. Cust. Appls. at 103):

> In the present case, furthermore, the decision of the board, acting as a classification board, did not depend in any degree upon the dutiable valuation of the screenings, and it was not necessary for the board to make a finding upon this subject in order to decide the issue raised by the protest. That issue related to the rate of duty which was applicable to the screenings, and not to their value. The collector had decided that the screenings were dutiable at the rate of 20 cents per bushel, whereas the importers contended that they were dutiable at 10 per cent ad valorem. It was this decision of the collector which was before the board for review, and the value of the screenings bore no relation whatever to the question.

Section 508, which had its origin in the Tariff Act of 1922, section 507,[4] is intended to apply where the "quantity or value of each class of such merchandise can not be readily ascertained by the customs officers". In such case, all goods shall be dutiable at the highest rate unless the importer segregates according to its provisions. *Perry, Ryer & Company* v. *United States*, 35 CCPA 28, C.A.D. 367 (1947); *Pink Supply Co.* v. *United States*, 32 CCPA 48, C.A.D. 284 (1944); *United States* v. *M. S. Cowen & Co.*, 32 CCPA 40, C.A.D. 283 (1944); *S. Schapiro & Sons* v. *United States*, 29 CCPA 235, C.A.D. 196 (1942); *United States* v. *M. J. Brandenstein & Co., supra; United States* v. *Washburn-Crosby Co., supra.*

Segregation of merchandise may be had, under the readily ascertainable rule or the provisions of section 508, only when two or more distinct commodities, and not a commodity and impurities, are commingled. *Albert F. Maurer Co.* v. *United States*, 61 Cust. Ct. 181, C.D. 3559 (1968).

The distinction between impurities and a commodity having tariff status was pointed up in *Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. Appls. 267, T.D. 37536 (1918), wherein an imported mixture of flaxseed and screenings, assessed as flaxseed under the Tariff Act of 1913, was held to be segregable and separately dutiable (although actual physical separation was not required). Noting that the

---

[4] Section 508, prior to the 1953 amendment, and section 507 of the 1922 act, provided:

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

screenings were subsequently sold as farm stock food and that they were a commercial commodity subject to a different rate of duty as a nonenumerated unmanufactured article under the act of 1913, the court stated (page 273):

> * * * A commodity which has a value such as have the screenings in question here can hardly appropriately be said to be an impurity. It is not the major commodity in value appearing in the importation, but it is a thing of substantial value, and as such subject to tariff duty. It is quite a different thing than something that has no such value and is destroyed.

In *F. W. Myers and Co., Inc.* v. *United States*, 47 Cust. Ct. 195, C.D. 2302 (1961), the court held, one judge dissenting, that certain peanut hearts, chaff, and sweepings imported combined with peanuts were not entitled to be treated as a distinct commodity separately dutiable from the peanuts, as the record failed to establish that these substances constituted something other than impurities for which no allowance could be made. The court said (page 201):

> * * * There is nothing in the record to indicate that the material separated from the peanuts constituted a recognized commercial commodity, such as the screenings in *Consolidated Elevator Co.* v. *United States, supra.* The fact that material in this case may have been sold, after the addition of fish oil, does not establish that, in its condition as imported, it was such a commodity. In view of section 507, *supra,* and paragraph 761, *supra,* it seems clear that it was not the intention of Congress to allow material commingled with nuts to be entered as a separate commodity, unless it is shown that it is a distinct commercial product. If the material is, in fact, impurities, it cannot be classified as waste or as any other tariff entity.

Thus, under the *Myers* and *Consolidated Elevator* holdings, a commodity which has a commercial value is not an impurity. However, they do not state, nor does it follow therefrom, as defendant urges, that all articles which are commercially valueless are impurities. Furthermore, as the specific issue was not raised therein, we do not find these cases authority for the government's claim that an article which has a recognized tariff status is not a segregable commodity, if valueless. In fact, such a construction would be at odds with *Peppard Seed Company* v. *United States*, 29 Cust. Ct. 307, C.D. 1484 (1952), wherein material of no commercial value and destroyed under customs supervision was held to be a distinct commodity that was properly segregable pursuant to section 508.

In that case, an importation of unthreshed bluegrass seed, consisting of the head and a portion of the stalk, was refused admission by the Department of Agriculture because of the low live seed content. The importer requested segregation under section 508 and had the

merchandise cleaned under regulations of the Department of Agriculture which allow such seed to be cleaned and then admitted, if found to meet the requirements of the Federal Seed Act, and the refuse from the cleaning to be destroyed. The cleaning resulted in seed which was admitted and assessed with duty under paragraph 763, Tariff Act of 1930; bluegrass stems which were destroyed under federal supervision (presumably as worthless) and on which *no* duty was assessed; and chaff, leaves, and refuse which were also destroyed, but not under customs supervision, on which duty was assessed under paragraph 763.

Plaintiff claimed therein that the importation was not segregable under section 508, but dutiable as an entirety. The court disagreed, stating (29 Cust. Ct. at 311–312):

> In order for the merchandise to be entered, the seed had to be separated from the balance of the plant. *Two distinct items* were found, bluegrass seed and a mixed material which remained after threshing. The seed was assessed with duty under paragraph 763, as amended, and a portion of the remaining material which was destroyed was not assessed with duty. *Since a part of the merchandise was subject to duty and a part was not, segregation under section 508 was proper.* In this connection, the tariff act and the Federal Seed Act and the regulations issued thereunder are *in pari materia* and should be read together. Note that the regulations issued for the enforcement of the Federal Seed Act are joint regulations of the Secretary of the Treasury and the Secretary of Agriculture, and that section 12.16 of the Customs Regulations of 1943 provides that the importation of agricultural and vegetable seeds is governed by such joint rules and regulations. Thus, merchandise which is not admissible under the Federal Seed Act without cleaning or processing *which results in a separation of the merchandise as imported into two or more commodities is segregable under section 508 of the tariff act.* The granting of plaintiff's application for permission to segregate in the instant case was proper and each item obtained after separation is classifiable under the appropriate paragraph of the tariff act. [Emphasis supplied except for *in pari materia.*]

> Plaintiff's alternative claim is that the portion of the merchandise which was sent to the city dump and not destroyed under Government supervision was erroneously assessed with duty under the provisions of paragraph 763, as amended, and is properly classifiable under some other paragraph of the tariff act.

> \* \* \* \* \* \* \*

> In the instant case, plaintiff has not established what part of the material consisted of dirt and impurities for which no allowance could be made and which was properly classifiable under paragraph 763, as amended, and what part, if any, consisted of material, which, if destroyed under Government supervision, could be considered a nonimportation. It follows that the presumption of correctness attaching to the collector's classification has not been overcome.

> \* \* \* \* \* \* \*

On the record herein, we hold that the merchandise as imported was segregable under the provisions of section 508 of the Tariff Act of 1930 and that the collector properly assessed duty on the bluegrass seed obtained in the segregating process and on that portion of the remaining material, which was not destroyed under Government supervision, at 2 cents per pound under paragraph 763 of the Tariff Act of 1930 * * *.

Thus, *Peppard* extended the scope of section 508 to allow segregation of worthless material destroyed under federal supervision, presumably as a nonimportation.

Turning to the question whether the crushed cone particles at bar are constructively segregable from the nuts for duty purposes, we advert to the court's comments in the incorporated case (54 CCPA at 61) that—

> * * * The court in *Amendola* expressly stated it was dealing with "valueless cones" which were either "thrown away" or "burned," just as here. It did not require that the importer show that the cones had "a commercial value in their imported condition," as the appellant infers, nor do we. We are therefore not persuaded that the court below erred when it did not attach significance to the fact that here the cones are crushed and not whole where in both instances the cone material is considered valueless.

Although defendant urges that *Amendola* has been, in effect, overruled by the subsequent enactment of section 508 and paragraph 763, we find, to the contrary, that, when viewed in the context of the legislative history of the provisions prohibiting allowance for impurities in seeds and in nuts and of paragraph 1722, that decision has received legislative ratification.

Under the doctrine of legislative ratification, Congress is presumed to be aware of prior judicial holdings when reenacting into subsequent law the tariff provisions the subject of those decisions. *C. J. Tower & Sons* v. *United States*, 46 CCPA 36, C.A.D. 692 (1958); *James P. Smith & Co.* v. *United States*, 21 CCPA 514, T.D. 46971 (1934); *Ayres, Bridges & Co.* v. *United States*, 8 Ct. Cust. Appls. 87, T.D. 37201 (1917).

The presumption acquires reenforcement with respect to *Amendola*, which was referred to in the *Summary of Tariff Information*, 1920 (prepared by the Tariff Commission for the use of the House Ways and Means Committee in anticipation of a general revision of the Tariff Act of 1913) as follows (page 365):

> In an importation of *Italian pine cones with the nuts attached thereto* the nuts were held to be dutiable under the eo nomine provision for nuts. The cones are not shells nor dirt nor other impurities in the nuts and duties should be assessed upon the weight of the nuts alone. (5 Ct. Cust. Appls., 516, of 1915.) [Emphasis copied.]

The *Digest of Decisions*, 1908–1915, prepared for the information of customs officers and others, also cites (page 690) *Amendola* as holding that—

> * * * The cones are not shell nor "dirt or other impurities" in the nuts, and duty should be assessed upon the weight of the nuts alone. * * *

Furthermore, House Report No. 248, of July 21, 1921, to accompany H.R. 7456, subsequently enacted as the Tariff Act of 1922, refers to the volumes of statistical and other information published by the government "all of which was carefully examined" (page 13) in drafting that bill, and to the publications of the Tariff Commission which were "extensively used" (page 14) in preparing schedule 7, on agricultural products.

The language in paragraph 283, Tariff Act of 1909, providing that "no allowance shall be made for dirt or other impurities in nuts of any kind, shelled or unshelled", which was construed in *Amendola*, was repeated without change in the successor provisions for nuts: paragraphs 226, Tariff Act of 1913; 759, Tariff Act of 1922; and 761, Tariff Act of 1930.

The wording of paragraph 630, under which the pine cones in *Amendola* were held to be classifiable, was reenacted without change in paragraphs 552, 1622, and 1722 of the Tariff Acts of 1913, 1922, and 1930, respectively.

Thus, Congress, although aware of the judicial construction of "dirt or other impurities", made no attempt on subsequent legislation to amend that language to include other material[5] or to limit the provision for vegetable substances, crude or unmanufactured, to merchandise having commercial value.

With respect to the "seeds" provisions, a similar prohibition, i.e., that "no allowance shall be made for dirt or other impurities in seeds provided for in this paragraph", was included in paragraph 212, Tariff Act of 1913.[6]

The proposed 1922 tariff act, as passed by the House, provided for "grass seeds" in paragraph 761, and for "other garden and field seeds" in paragraph 762 (which included most of the seeds covered by its predecessor, paragraph 212). Neither paragraph included a proviso

---

[5] See, for example, paragraph 774, Tariff Act of 1930, covering "vegetables in their natural state", which provides: "That in the assessment of duties on vegetables of any kind no *segregation* or allowance of any kind shall be made for *foreign matter* or impurities mixed therewith." [Emphasis added.]

[6] Par. 212 provided for:

Seeds: Castor beans or seeds * * * flaxseed or linseed and other oil seeds * * * poppy seed * * * mushroom spawn, and spinach seed * * * canary seed * * * caraway seed * * * anise seed * * * beet (except sugar beet), carrot, corn salad, parsley, parsnip, radish, turnip, and rutabaga seed * * * cabbage, collard, kale, and kohl-rabi seed * * * egg plant and pepper seed * * * seeds of all kinds not specially provided for in this section * * *.

prohibiting allowance for dirt or other impurities. Instead, that phrase was revised and incorporated in paragraph 732,[7] which read as follows:

> Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, * * * ground, * * * *Provided*, That screenings, dirt, and *other foreign matter* mixed with grains or seeds provided for in this *title* shall pay the same rate of duty as the grains or seeds: *Provided further*, That when grains or seeds contain more than 5 per centum of any one foreign matter dutiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate. [Emphasis added in part.]

However, the Senate struck out the provision in paragraph 732 relating to "screenings, dirt, and other foreign matter" and added a provision to the bill that "no allowance should be made for dirt or other impurities in grass seeds"; and the House receded on both amendments.[8] Accordingly, paragraph 761, as finally enacted, contained the provision that "no allowance shall be made for dirt or other impurities in seed provided for in this paragraph"; and paragraph 732 was subsequently adopted, without the prohibition, as paragraph 731.

The history of legislation during the course of its consideration by Congress, particularly in connection with a phrase that has been before the court, is strongly indicative of actual legislative intent. *H. W. Robinson Air Freight Corp.* v. *United States*, 45 Cust. Ct. 102, C.D. 2207, 188 F. Supp. 745 (1960). With the knowledge of earlier judicial construction placed upon the phrase "dirt or other impurities", Congress expressly considered and rejected extending and amplifying its scope to include, not just impurities, but "other foreign matter" [9] in seed.

---

[7] The *Summary of Tariff Information*, 1921, prepared by the Tariff Commission at the request of the Senate Committee on Finance to provide information on H.R. 7456, explained (p. 706) :

> * * * The provision as to allowance for dirt and impurities is an *amplification and extension of a similar provision* in paragraph 212 of the act of 1913, * * *. [Emphasis added.]

And see *Summary*, p. 785.

[8] House Conference Reports No. 1207, Sept. 12, 1922, and No. 1223, Sept. 14, 1922, 67th Cong., 2nd Sess., to accompany H.R. 7456. See 62 Cong. Rec., Pt. 12, pp. 12473, 12474, 12644 and 12645.

[9] In *United States* v. *International Milling Co.*, 16 Ct. Cust. Appls. 176, T.D. 42809 (1928), involving an importation of wild mustard seeds which had been screened from wheat or other grains, the court, construing the provision in paragraph 731 that "when grains or seeds contain more than 5 per centum of any one foreign matter dutiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate", stated (p. 180) :

> The proviso applies to an importation of grain or seeds which contain foreign matter. The importation at hand is the foreign matter which has been taken from grain or seeds. * * *

Where a provision is reenacted without substantial change, after the same has been construed in an authoritative decision which has been brought to the attention of the legislature, it will be accepted as legislative approval of the construction contained in that provision. *C. J. Tower & Sons v. United States, supra; United States v. E. Dillingham, Inc.,* 41 CCPA 221, C.A.D. 555 (1954); *Voss Cutlery Co. v. United States,* 41 CCPA 42, C.A.D. 526 (1953); *United States v. Great Pacific Co., Shui Tai & Co.,* 23 CCPA 319, T.D. 48192 (1936); *James P. Smith & Co. v. United States,* 21 CCPA 514, T.D. 46971 (1934).

The reenactment of the provisions in issue herein in the 1922 and 1930 acts is tantamount to legislative acquiescence in and approval of the earlier construction placed upon them in *Amendola,* and of the holding therein that merchandise which has a recognized tariff status is, albeit valueless, nonetheless segregable.

If Congress had wished to limit segregation of commingled merchandise to commodities having commercial value, it would have been an easy enough matter to do so by express language. But it did not.

In the absence of such language, we find no basis for holding that the "readily ascertainable" rule does not apply to goods which are valueless; nor may we impute to Congress an intent to exclude from the scope of section 508, which applies to "dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty", articles which, although of no value, are classifiable under the tariff laws.[10]

As the differences between the crushed cone particles and stem ends at bar and the whole cones in *Amendola* are immaterial and insignificant for classification purposes, *United States v. Border Brokerage Co., supra,* we find and hold that the two commingled commodities herein are constructively segregable; that the cleaned seeds are dutiable, as classified, under paragraph 764, Tariff Act of 1930, as modified by T.D. 55816, at the rate of 1½ cents per pound; and that the cone particles and stem ends are classifiable as crude vegetable substances, not specially provided for, under paragraph 1722 of said act and entitled to duty-free entry.

Judgment will be entered accordingly.[11]

---

[10] Whether section 508 is applicable to commingled merchandise, a portion of which is valueless and constitutes a "nonimportation", as in *Peppard Seed Co. v. United States, supra,* is not before us for consideration. We are only concerned with, and limit our holding to, merchandise which has acquired separate tariff status from the other merchandise with which it is commingled or packed.

[11] It appears from the official papers in protests 63/9451, 63/9455 and 63/9464 that the entries were liquidated within 60 days after appraisement. Since no appeal for reappraisement has been filed and the time therefor has expired, the liquidations remain valid. *John V. Carr & Son, Inc. v. United States,* 66 Cust. Ct. 316, C.D. 4209 (1971).

CONCURRING IN PART AND DISSENTING IN PART

RICHARDSON, Judge: I concur in the opinion of the majority in all of the involved protests except protests 63/9451, 63/9455 and 63/9464. I dissent from the majority in these protests because the liquidation was not based on a "final appraisement."

According to a footnote in the majority opinion the official papers in protests 63/9451, 63/9455 and 63/9464 indicate the entries were liquidated within 60 days after appraisement, but since no appeal for reappraisement has been filed and the time therefor has expired, the majority considers the liquidations valid under the case of *John V. Carr & Son, Inc.* v. *United States*, 66 Cust. Ct. 316, C.D. 4209 (1971).

These are 1963 protests, and, according to Title I, Section 122 of The Customs Courts Act of 1970, they are governed by the law in effect prior to October 1, 1970. The liquidations in these protests are premature and void. The law in effect prior to October 1, 1970 as declared by the Court of Customs and Patent Appeals, and by this court in an unbroken chain of decisions, is that a liquidation of an entry prior to the expiration of the 60 days after appraisement in which the collector or district director might appeal for reappraisement is not upon a "final appraised value," is premature and void, and a protest against such liquidation must be dismissed as premature. *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233 (1936). See also: *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119, T.D. 46559 (1933), *Biddle Purchasing Co., et al.* v. *United States*, 69 Treas. Dec. 880, T.D. 48320 (1936), *Ti Hang Lung & Co.* v. *United States*, 3 Cust. Ct. 268, C.D. 248 (1939), and *The New Home Sewing Machine Co.* v. *United States*, 62 Cust Ct. 895, R.D. 11655 (1969). There can be no "final appraised value" until either the right of appeal has been exhausted, or the statute of limitations has run against such appeal. Only then can there be a legal liquidation.

The Second Division in the case of *John V. Carr & Son, Inc.* v. *United States*, C.D. 4209 (April 29, 1971), takes the position that the Court of Customs and Patent Appeals (and this court prior to April 29, 1971), in using the word "void" to characterize a liquidation made prior to the expiration of the 60 days allowed for an appeal for reappraisement didn't really mean "void" but meant "voidable"; that it is legally wrong for the district director to liquidate prior to the expiration of the 60 days within which he may appeal, but his illegal act is merely "voidable," and the blemish of illegality in not waiting for a "final appraisement" before liquidating is automatically wiped off by the expiration of the 60 days without the district director filing an appeal for reappraisement.

The opinion in the *Carr* case, *supra*, relies upon 19 U.S.C.A., § 1501 (a) (section 501(a) of the Tariff Act of 1930) in attempting to estab-

lish a "final appraised value." That statute provides in the part relied upon as follows:

"(a) ... The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court."

19 U.S.C.A. § 1501 would be pertinent here, if plaintiff was a party seeking an *appeal for a reappraisement*—an action against an appraising officer for his determination of an "appraised value." This is not such an action. This is a protest proceeding—an action against a collecting officer for his liquidation on a basis other than a "final appraised value," involved in 19 U.S.C.A., § 1503,—one of the three essential elements the collecting officer is required to use in liquidating an entry, whether or not there has been an appeal for a reappraisement. The other two elements are quantity and rate. He cannot liquidate until the appraisement has become a "final appraised value," and he has determined the other two elements (quantity and rate) entering into his liquidation.

The opinion in the *Carr* case, *supra*, does not cite any cases holding that a collector or district director may make a premature liquidation in contravention of the statute, 19 U.S.C.A., § 1503 (section 503 of the Tariff Act of 1930, as amended), which provides:

"(a) Except as provided in section 1562 of this title (relating to withdrawal from manipulating warehouses), the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the *final appraised value*." (Emphasis added.)

It has been judicially determined that an appraised value becomes final upon the expiration of a 60-day period absent the filing of an appeal for reappraisement, and that the collecting officer cannot liquidate until the appraisement has become a "final appraised value."

The premature liquidation was not an act which the collector had the power to perform, but performed in an improper manner as the Court of Customs and Patent Appeals held the facts to be in the case of *Joseph Fischer* v. *United States*, 38 CCPA 143, 150, C.A.D. 452 (1951), cited in the *Carr* case. The collector had no power to liquidate until there was a "final appraisement," that is, after the 60 days for appeal had expired. Even that case made a distinction between what is merely

"erroneous" and thus "voidable" and what is "illegal" and thus "void."

Whereas the opinion in the *Carr* case, *supra*, does not expressly state that the district director may waive the 60-day period within which he may appeal, the opinion implies as much.

The argument that the collector or district director be regarded as having waived his right to appeal by a premature liquidation was exploded in *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119, T.D. 46559 (1933), where the collector liquidated an entry eleven days after the appraiser's report and thereafter filed an appeal for reappraisement on the fifty-ninth day. The court in permitting him to appeal for reappraisement did not regard the premature liquidation as a waiver of his right to appeal. The court at page 121 said:

> ". . . The collector in this case had no appraised value upon which he could *legally* assess duty until after the 60-day period after the appraiser's return, within which he was authorized to file an appeal for a reappraisement, had expired." (Emphasis added.)
>
> \* \* \* \* \* \* \*
>
> "It is not within the power of the collector to destroy the authority granted him by Congress of filing an appeal for a reappraisement by liquidating an entry during the time within which he is authorized to file an appeal for a reappraisement of the merchandise. *The collector cannot destroy a legal right by the doing of an illegal act.*" (Emphasis added.)

A waiver means to irrevocably relinquish a right that is beneficial to the individual. A person cannot make a waiver of a right and then later say "I have changed my mind. I take the waiver back." The 60-day period within which the collector or district director may appeal is not a personal right or privilege to waive, but a right given the collector or district director on behalf of the United States Government to determine within a 60-day period whether in the public interest an appeal for reappraisement should be taken. He cannot shorten this 60-day period by a premature liquidation.

The *Lawrence Groom & Co.* case, *supra*, was decided on the basis of section 503 of the Tariff Act of 1922 which did not contain the expression "final appraised value." The court did use substantially similar language in its decision when it said: "In this case the appraised value of the merchandise did not become *final* and conclusive upon all parties so long as the right of appeal was vested in either of them." (Emphasis added.)

The expression "final appraised value" appeared for the first time in section 503 of the Tariff Act of 1930. Section 503 was amended in 1953, but Congress retained the expression "final appraised value," with a knowledge of the court's interpretation of the expression. If Congress had disapproved of the long standing judicial interpretation

of what is meant by "final appraised value," it is submitted that it would have further amended the statute to indicate its disapproval. Its failure to do so evinces an intent to consider premature liquidations null, void and of no effect.

In the *Biddle Purchasing Co., et al.* case, *supra*, the majority of the court also rejected the contention that a liquidation prior to the expiration of the 60-day period constitutes a waiver of the 60-day waiting period for the appraisement to become final.

The Second Division, in its opinion in the *Carr* case, *supra*, states that in the *Biddle* case, *supra*, ". . . where no appeal was filed, the appraisement was not held void." The issue in the *Biddle* case, *supra*, was not whether the appraisement was void, but whether the liquidation was void. The court had the following to say on this issue, at pages 885 and 886 of its opinion:

> "It was only after sixty days from the date of the appraiser's report that the appraised value became final. Any liquidation made prior to the time when the appraisement becomes final is *void and without any force or effect. Such has been the holding of this court and the appellate court.*" (Emphasis added.)

> ". . . on March 23, 1936, in *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233, [the Court of Customs and Patent Appeals did] hold that the attempted liquidation of the entry prior to the expiration of the time within which to appeal for reappraisement was properly held by the trial court and the division to be *null and void.*

> "On the facts in the case at bar we so hold." (Emphasis added.)

> At page 885.

> \* \* \* \* \* \* \*

> ". . . The date on which final appraisement became valid was provided for under existing law. Therefore the liquidation in question, having been made prior to the time allowed by law, viz, sixty days, when the appraisement became final, and during which period the collector had the right to appeal, was invalid.

> "*We therefore hold the liquidation of the entries covered by these protests null and void, and of no force and effect.* The protests are sustained." (Emphasis added.)
> At pages 885–886.

The headnote in the *Biddle* case, *supra*, at page 880 also states:

> "A liquidation made prior to the expiration of the sixty days allowed by law to the collector within which to appeal for reappraisement is *void*, as the appraisement by the appraiser does not become final and conclusive until such time has expired." (Emphasis added.)

Admittedly a headnote is no part of the decision in a case, but in this instance it does succinctly and accurately capsule the opinion.

The Customs Courts Act of 1970, effective October 1, 1970, changes

the administrative procedure in appraisement and liquidation, but the same Act limits this court to applying the law in effect prior to October 1, 1970, in deciding protests, the trial of which began prior to October 1, 1970 (Title I, Section 122 of The Customs Courts Act of 1970). These protests were tried prior to October 1, 1970.

The liquidations herein are null and void by reason of their prematurity, and the protests filed herein against such void liquidations are premature, and must, therefore, be dismissed.